[—— NYS2d ——]

In the Matter of TWENTIETH CENTURY FOX FILM CORP., Appellant. "I DON'T THINK SO, INC.", et al., Appellants.

First Department, June 3, 1993

APPEARANCES OF COUNSEL

*Martin Glenn* of counsel *(Diane E. Lopez* and *Robert F. Kramer* with him on the brief; *O'Melveny & Meyers,* attorneys), for Twentieth Century Fox Film Corp., appellant.

*Franklin, Weinrib, Rudell & Vassallo* for "I Don't Think So, Inc." and another, appellants.

## OPINION OF THE COURT

Per Curiam.

The issue on this appeal, which has been jointly brought by petitioner and respondents, involves the applicability of section 216.1 of the Uniform Rules for Trial Courts (22 NYCRR 216.1), which deals with the sealing of court records, to the documents offered by the parties to the Surrogate's Court in order to obtain approval of a contract under section 35.03 of the Arts and Cultural Affairs Law.

This proceeding was commenced in order to gain the Surrogate's approval of certain contracts (hereinafter referred to as the contract) entered into by petitioner Twentieth Century Fox with then-11-year-old respondent Macaulay Culkin in connection with the sequel to the motion picture "Home Alone." Such approval was sought pursuant to section 35.03 of the Arts and Cultural Affairs Law, which establishes a detailed procedure for the review of performing contracts entered into by infants. Under this statute, if the court determines that the submitted contract is "reasonable and provident and for the best interests of the infant" (§ 35.03 [5] [k]), the infant will be precluded from later disaffirming the contract on the ground of infancy or on the ground that his or her parent or guardian lacked authority to make the contract. Included in the review are not only the terms of the contract itself but the proportion of the infant's earnings which are to be set aside in trust for the future and the proportion which should be made available to the infant's family for current use (§ 35.03 [3] [b]).

In order to allow the court to properly perform its review, it must have access to extensive information regarding the parties. Thus, review of the propriety of the motion picture

contracts in this case will necessarily involve an inquiry not only into the contracts themselves, which include a certificate of employment, a performing agreement, a commercial tie-in agreement and a merchandising contract, but also, in addition, the screenplay, a schedule of the infant's gross earnings, estimated outlays and net earnings, and information concerning the financial status of the infant, his parents, and his siblings.

The parties moved to seal the records in the proceeding so as to prevent public disclosure of the underlying information. This motion was brought pursuant to 22 NYCRR 216.1 (a), which provides: "Except where otherwise provided by statute or rule, a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as the parties."

The Surrogate found that, in this case, the public interest in disclosure outweighed the stated reasons of the parties for requesting confidentiality and that, with the exception of the screenplay, the records should therefore not be sealed.

On this appeal, the parties seek to overturn the Surrogate's order. Petitioner argues that its individual performance contracts are confidential business information which could give competitors an advantage and could disadvantage petitioner in future negotiations with other artists. Furthermore, respondents have offered proof that substantial efforts have been made to preserve the privacy of the Culkin family, and it is argued that disclosure of the details of the contract would invite harassment and annoyance from investment advisors and could subject the infant to potential dangers.

We find that the Surrogate failed to take into account certain factors militating against disclosure of the particular contracts involved herein, and upon taking those factors into account, we conclude that the records should be sealed.

Although the subject of some controversy, the enactment of 22 NYCRR 216.1 (a) did not effect a change in the law, which has always favored public disclosure of court records. The rule was enacted largely in response to a concern that, in cases in which the parties were in agreement to seal the records, courts were not sufficiently taking into account the public interest and exercising their discretion to override the parties'

wishes *(see,* Hoenig, Products Liability, *New York's Rule on Sealing of Court Records,* NYLJ, Mar. 1, 1991, at 3, col 1; Carpinello, *Public Access to Court Records in Civil Proceedings: The New York Approach,* 54 Alb L Rev 93, 98-100). In particular, concern had been widely expressed about the practice of sealing records of settlements in product liability and other tort actions where the information might alert other consumers to potential defects *(id.,* at 100-101; *see generally,* Herman, *No more Dirty Little Secrets in the Courts,* Washington Post, Sept. 15, 1989, at A31, col 6).

Clearly, the public has no similar interest in the particular information involved in the instant proceeding. The Surrogate, however, found that the necessary focus in making a determination under section 216.1 (a) was not merely the public's interest in the particular information sought to be sealed, but in the presumed benefit to the administration of justice if court records remain open to the public except in certain exceptional circumstances. In particular, the Surrogate noted that, in a matter involving an infant, the court acts as a representative of the public in protecting the infant, and the public therefore has a particular interest in overseeing the court's handling of this important duty.

There is no question that there is a general public interest in disclosure of court records *(see, Nixon v Warner Communications,* 435 US 589, 597; *see also, Matter of Newsday, Inc. v Sise,* 71 NY2d 146, 153, n 4, *cert denied* 486 US 1056; *Matter of Brownstone,* 191 AD2d 167), or that that interest is a factor which should be taken into account when a court is deciding whether to grant a motion to seal pursuant to section 216.1. On the other hand, confidentiality is, in certain circumstances, necessary in order to protect the litigants or encourage a fair resolution of the matter in controversy. As one commentator has noted, "Courts must have discretion to balance the competing interests of the parties, the public, and the justice systems. When the balance favors confidentiality, confidentiality should be provided". (Miller, *The Private Costs of Public Justice,* 63 NY St B J 12, 13 [July/Aug. 1991].) In this case, while we agree with the Surrogate that the public has a strong interest in overseeing the conduct of the courts in matters involving the protection of an infant, we find that that interest is not sufficient to overcome the compelling arguments made in favor of preserving the privacy of the parties, particularly the infant. To conclude,

as did the Surrogate, that the public's interest must always predominate would make disclosure virtually automatic in any proceeding brought pursuant to Arts and Cultural Affairs Law § 35.03, and would create a substantial risk of undermining the very purpose of that section.

By virtue of section 35.03, the court may insulate an infant from deleterious practical effects which arise by reason of the intended protection of the common law in rendering voidable any contract entered into by an infant *(see, Joseph v Schatzkin,* 259 NY 241; *Casey v Kastel,* 237 NY 305) or entered into by another on an infant's behalf *(see, Lee v Silver,* 262 App Div 149, *affd* 287 NY 575). The statute affords a means of overcoming the natural reluctance on the part of a party who might otherwise contract with an infant to enter into an agreement which does not bind the other party. Thus, the purpose of the statute is to bestow upon the infant an advantage of which he or she would otherwise be deprived by law, i.e., the ability to be bound by contract. Its goal is to permit the party contracting with an infant to be as confident of the survival of the contract as if the infant had reached majority *(see, Shields v Gross,* 58 NY2d 338, 345-346), and thereby encourage parties to enter into contracts beneficial to the infant which they would otherwise forego because of the uncertainty of voidability. Toward this end, infants involved in the performing arts have been singled out by law, albeit for their benefit, as a special class who must reveal to the court very private information concerning their finances and business arrangements, and compel parties who wish to contract with them to do the same, in order to be able to effectively contract. If such information were to be made public as a matter of course in order to permit a contract to receive the benefits of section 35.03, the prospect of such disclosure would undoubtedly have a chilling effect on the willingness of those who would otherwise wish to contract with infants. This is precisely the result which the statute was designed to ameliorate.

This is not to say that the records in such proceedings should automatically be sealed in every case. It means only that the type of proceeding, in and of itself, is an important factor which the court should take into account in determining whether the parties have established sufficient good cause to seal the records to overcome any public interest in their disclosure. In this case, we find that the parties have offered sufficient additional reasons to demonstrate that the essen-

tially confidential nature of such a proceeding should be preserved. In addition to the arguments relevant to the best interests of the infant and his family, we also take note of petitioner's argument that its relationship with its competitors, as well as with other artists in its employ, could be compromised by the disclosure of the details of the contracts, which include information as to how it has marketed the subject motion picture. *(See, Matter of Crain Communications v Hughes,* 135 AD2d 351, 352, *affd* 74 NY2d 626.)

Under all of the circumstances here present, we find that the records should be sealed and the order of the Surrogate denying sealing should be reversed.

Accordingly, the order of the Surrogate's Court, New York County (Eve Preminger, S.), entered June 11, 1992, which denied petitioner's motion pursuant to 22 NYCRR 216.1 to seal court records, including the contracts and financial schedules required to be submitted to the court in relation to the within petition brought pursuant to section 35.03 of the Arts and Cultural Affairs Law, should be unanimously reversed, on the law, the facts, and in the exercise of discretion, the motion granted, and the records sealed, without costs.

SULLIVAN, J. P., ELLERIN, WALLACH, KUPFERMAN and Ross, JJ., concur.

Order, Surrogate's Court, New York County, entered June 11, 1992, unanimously reversed, on the law, the facts, and in the exercise of discretion, without costs, the motion granted, and the records sealed.