*493 OPINION OF THE COURT
C. Raymond Radigan, J.
In these proceedings involving the estates of a husband and wife, George and Hazel Iskyan, each will creates a testamentary trust with their daughter Elizabeth Levensky as the income beneficiary with remainder to her surviving issue. In each estate various proceedings were commenced including a petition by Ms. Levensky to remove United Jersey Bank (UJB) as her cotrustee, a petition by UJB for advice and direction and accounting proceeding by UJB as cotrustee. Following the commencement of the trial in the removal proceedings, a stipulation of settlement was placed on the record resolving all issues in the above proceedings with the exception of attorneys’ fees to be charged to the trust, which has been reserved for determination by the court based on the papers filed without a hearing. The stipulation of settlement expressly provides that UJB agrees to resign as cotrustee, "with no admission of any wrongdoing on its part.”
Where a trustee has been removed for misconduct, costs and expenses of the suit are his own personal obligation (First Natl. Bank v Kamm, 152 Ind App 353, 283 NE2d 563). However, a successful defense by a trustee ¿gainst an effort to remove him is a defense on behalf of the trust estate itself for which attorneys’ fees may be charged against the trust (Jessup v Smith, 223 NY 203).
In the papers presently filed, the attorneys for both sides have continued to argue the relative merits of each of their cases. It appears that Ms. Levensky’s primary irritation with the bank commenced following the substitution of a particular trust officer assigned to these trusts in 1991. While she requested the substitution of such trust officer this was not forthcoming and she claims had there been such a substitution she would have been satisfied. For the bank’s part, its primary concern was addressed in its petition for advice and direction where it complained that Ms. Levensky refused after repeated requests to invest the trust portfolio in other than income-producing securities, which, of course, would primarily benefit her as the income beneficiary. Ms. Levensky moved to dismiss the advice and direction proceeding, arguing that she had no duty to diversify investments. The court, however, in its decision (NYLJ, Oct. 12, 1994, at 28, col 3) denied the motion to dismiss the proceeding, finding that it was not a question of failure to diversify, but a failure to be impartial in that a trustee has a duty to preserve a fair balance between the income beneficiary and the remaindermen.
Notwithstanding the above rather general observations, the *494 extensive comments of counsel attempting to place blame at this point as to who created the hostility between the parties is rather futile. Unless there has been a final determination as to alleged misconduct of a trustee, such alleged misconduct cannot be interposed as a defense to the request for attorneys’ fees or services rendered in defending the trustee (Saulsbury v Denton Natl. Bank, 25 Md App 669, 335 A2d 199; First Natl. Bank v Kamm, supra). The attorneys for the bank request a total of $158,660.50 for all services rendered together with disbursements. The firm has essentially based its request for fees upon a computerized compilation of hours devoted to these services by various members of the firm. However, the time-clock approach is not the sole criteria by which legal services are to be determined. The cases require consideration not only of the time spent but also the size of the matter, the difficulties involved, the professional standing of counsel, the work actually performed and the results achieved (Matter of Freeman, 34 NY2d 1; Matter of Potts, 213 App Div 59).
While the court appreciates the considerable amount of time and effort expended in these proceedings with multiple petitions and numerous motions, the two trusts themselves aggregate no more than $900,000. However, regardless of the amount of time expended, the fees that can be allowed are circumscribed by the size of the matter involved (Matter of Kaufmann, 26 AD2d 818, affd 23 NY2d 700). The attorneys for UJB argue that a reduction in their fees would inure to the detriment of UJB, which would then have to pay to them fees incurred in defending itself against "groundless accusations of misconduct”. However, it is axiomatic that a fiduciary in the absence of consent from the beneficiaries cannot impose a charge for attorneys’ fees beyond a reasonable amount (Matter of Reisfeld, 227 NY 137; Matter of Woolfson, 158 Misc 928). Taking into consideration all of the various criteria required to be employed in fixing attorneys’ fees, the court fixes counsel fees for UJB in the amount of $50,000 for all services rendered. With regard to the requested disbursements there does not appear to be a consolidated and itemized statement of all disbursements which should be required to be filed before any allowances can be made.
The remaining application concerns the fees of the attorneys for Ms. Levensky. It is a well-settled rule that where services are rendered on behalf of an individual beneficiary of a trust or estate rather than for the benefit of the trust or estate, the attorney for the beneficiary must look to his client rather than the trust or estate for his compensation (Matter of Lirakis, 111 *495 AD2d 924; Matter of Baxter, 196 AD2d 186). While it is true that Ms. Levensky is also a cotrustee besides being a beneficiary, nevertheless the petitions for removal were brought on her behalf as a beneficiary of the trust, namely the income beneficiary, and not as a cotrustee. Moreover, it has been held that a cotrustee has no status to apply for the removal of his or her cotrustee (Matter of Braloff, 3 AD2d 912, 913, affd 4 NY2d 847). Other than those services which were directly on behalf of Ms. Levensky as cotrustee, normally the court would be relegated to an inquiry of whether the services rendered on behalf of Ms. Levensky benefitted the trust estate.
However, since the stipulation of settlement expressly provides and all of the interested persons in the trust have consented to the fixation of Ms. Levensky’s attorneys’ fees, the court under those circumstances may proceed to their fixation (Matter of La Grove, 31 AD2d 928; see also, Matter of Lirakis, supra). The request for fees on behalf of Ms. Levensky include not only those of her attorneys but also of trial counsel. Again, taking into consideration all of the criteria required under the cases (Matter of Freeman, supra; Matter of Potts, supra), the court fixes the fees of counsel for Ms. Levensky in the total amount of $40,000 to include not only those services of counsel of record but those of trial counsel and for services rendered to Ms. Levensky directly on her behalf as cotrustee. With regard to disbursements, a consolidated and itemized statement should be filed. All fees paid from trust funds in excess of the amounts fixed are to be returned. The fees fixed herein are without prejudice to the attorneys securing additional funds from their clients that they may be entitled to.