OPINION OF THE COURT
Eve Preminger, S.
This proceeding is an application to fix attorneys’ fees for the preliminary executors of decedent’s estate. Before the Court are a motion to dismiss the answer of the executors who ultimately qualified as permanent fiduciaries, and a motion to seal the answer and to seal the sealing motion. For the reasons set forth below, all of the motions are denied.
The decedent, Renate Hofmann, was the widow of the internationally renowned abstract artist Hans Hofmann. She suffered from emotional disturbances which led to the appointment in 1981 by the New York County Supreme Court of a corporate fiduciary (the Bank) and a noted New York trusts and estates lawyer (the Lawyer) as cocommittees of her assets, valued at more than $50 million, and to the appointment of the Lawyer as committee of her person. The Bank and the Lawyer served in these capacities until Mrs. Hofmann’s death in 1992.
Upon Mrs. Hofmann’s death two wills were offered for probate. One instrument dated March 23, 1972 named the current executors as fiduciaries; another handwritten instrument dated February 16, 1988, with codicil dated one day later, named as executor Mrs. Hofmann’s bodyguard, Bob G. Roberts, who selected the Bank as coexecutor. The executors named in *843 the 1972 will and certain others objected to the probate of the 1988 instrument.
At the outset of the probate litigation was a vigorous dispute over the appointment of preliminary fiduciaries. Observing the rule of priority established by SCPA 1412 (2) (a), this Court chose to avoid a “mini-probate contest” at that early stage and granted preliminary letters testamentary to Mr. Roberts and the Bank as the fiduciaries designated pursuant to the instrument latest in date. The Court noted, however, its reservations about the validity of the 1988 will. (See, Matter of Hofmann, NYLJ, Nov. 30, 1992, at 27, col 2.)
The will contest was settled before trial. In a decree dated June 25, 1996, the 1988 will was expressly denied probate and the 1972 will was admitted to probate, as modified to reflect the provisions of the parties’ settlement. The parties nominated in the 1972 will were granted letters testamentary.
The probate decree also provided that the attorneys who represented Mr. Roberts and the Bank “shall have their fees for services rendered to the Preliminary Executors fixed at the foot of this Decree after filing herein their respective Affidavits of Services, upon ten days prior written notice served by certified mail upon the attorneys for the parties who have appeared herein.” Mr. Roberts and the Bank had been represented in their unsuccessful efforts to probate the 1988 will by the firm (the Law Firm) that now seeks to dismiss the executors’ answer in this proceeding to fix its fees.
After the settlement of the probate contest, the Lawyer and the Bank filed their final account of proceedings as cocommittees for decedent in the Supreme Court, New York County. The executors served and furnished to the Supreme Court, but did not file, objections to that account which contained unusual and shocking allegations of misconduct on the part of the Lawyer, the Bank, and Mr. Roberts. The allegations included charges of gross and wilful neglect, and sought damages for pain and suffering allegedly endured by Mrs. Hofmann during the tenure of the cocommittees. The Bank and the Lawyer served and furnished to the Supreme Court, but did not file, papers in which they set forth defenses to the executors’ allegations.
The Supreme Court proceedings were settled and the parties executed a confidential agreement pursuant to which the committees made substantial payments to Mrs. Hofmann’s estate *844 and waived additional commissions.[1] The parties exempted from their settlement the issue of the Law Firm’s fees and expressly reserved the executors’ right to object to those fees in this Court on any ground. The settlement agreement states:
“Nothing in this Agreement, the Releases or the Supreme Court Decree (i) shall prevent the Executors from proceeding in Surrogate’s Court, and on appeal therefrom, on whatever ground they may have and in whatever fashion they deem advisable, including the filing of any documents * * * to object to and/or seek reimbursement of the fees and disbursements paid to or claimed by [the Law Firm] in connection with [the Law Firm’s] representation of the Preliminary Executors of the Estate of Renate S. Hofmann and to preclude any further payment of any sort to [the Law Firm].”
The Motion to Dismiss the Answer
In response to the Law Firm’s affidavit of services submitted in support of its fees the executors served an answer objecting to the allowance of any fees. The allegations contained in the answer, which incorporates allegations raised in the probate contest and in the Supreme Court accounting proceeding, assert, inter alia, that the preliminary executors knew or should have known that the 1988 will was invalid and that a major objective of the preliminary executors in propounding the 1988 will was to protect the Lawyer and the Bank from liability for their alleged misconduct as Mrs. Hofmann’s cocommittees. None of these allegations of mistreatment of Mrs. Hofmann or of the use of the probate contest for personal gain at the estate’s expense were presented to this Court during the conferences concerning the settlement of the probate contest or at any time prior to this fee application.[2]
*845 The Law Firm has moved to dismiss the executors’ answer on the grounds that it fails to state a cause of action or, alternatively, that the cause of action is barred by res judicata, collateral estoppel, and law of the case.
The law is well settled that for purposes of deciding a motion to dismiss, the allegations contained in the answer are deemed to be true (Sanders v Winship, 57 NY2d 391; Matter of Frank, NYLJ, Aug. 24, 1994, at 25, col 6). Viewed in this light, the allegations contained in the answer clearly establish a prima facie case of bad faith by the preliminary executors which would support the denial of all of their counsel fees against the assets of decedent’s estate (Matter of Winckler, 234 AD2d 307; Matter of Kaufmann, 51 Misc 2d 560, mod on other grounds 26 AD2d 818, affd 23 NY2d 700).
The Law Firm (as well as the movants in the sealing motion) argues under various theories of estoppel that the executors are barred from raising the allegations previously pleaded in the probate contest and in the Supreme Court accounting proceeding. The Court finds these arguments irrelevant. This Court cannot be estopped from considering allegations bearing on the fee issue which concededly were not previously presented to the Court. Had the Court been made aware of the full nature and extent of the allegations it might not have issued the probate decree.[3] The Law Firm’s position begs the precise question to be determined in this dispute. If it is true, as alleged here, that the preliminary executors and their attorneys offered the 1988 will in bad faith, statements made by this Court at a time when it did not have the benefit of this information cannot be relied on to justify a fee to the lawyers for the preliminary executors.
The fact that some of the allegations raised in the executors’ answer were involved in the probate contest which was settled by the parties does not dictate a different result.[4] The resolution of the probate contest did not dispose of the question of the legal fees which are now at issue. Moreover, misguided reliance is placed on the recital in the probate decree that “le *846 gitimate issues have been raised as to which of the decedent’s [w]ills should be admitted to probate and that the compromise is made in good faith in the context of a bona fide probate contest.” Although the Court has a statutory obligation to satisfy itself of the genuineness of a will and the validity of its execution before admitting it to probate (SCPA 1408), this recital did not constitute a finding of fact based on evidence and a hearing. It merely sanctioned the resolution of the probate contest in order to avoid further litigation and expense and sought to reflect that the settlement was reached at arm’s length. Similarly, contrary to the Law Firm’s assertion, reference in the probate decree to fixing fees upon the filing of affidavits of services does not limit the scope of the Court’s inquiry in deciding the fee issue.
With respect to the allegations raised in the Supreme Court accounting proceeding, these are not barred by the parties’ settlement agreement since the agreement expressly provides that the executors may contest the preliminary executors’ counsel fees on any ground.
The various estoppel arguments serve only to obfuscate the issue of whether any fees may be paid from the estate in these circumstances and have no application in the context of this proceeding. Despite express provision in the probate decree for further proceedings on the fee issue, the Law Firm attempts to show that the “transactional analysis” approach to the doctrine of res judicata adopted by this state bars litigation of any claims involving the allegations raised in the settled probate contest. None of the cases cited by the Law Firm addresses the applicability of the res judicata doctrine in the particular situation presented here where as part of the settlement of a probate contest the parties agree to reserve the issue of counsel fees for later judicial determination. (See, Estate of Blank, supra.)
For each of the reasons discussed above the claims sought to be dismissed are not subject to estoppel by res judicata or otherwise.
The Motions to Seal
A court may not order sealing of its records except upon a finding of good cause (22 NYCRR 216.1 [a]). The rule reflects a long-standing recognition of the importance of allowing public access to court records in order to protect the general right *847 of the public to have open court proceedings.[5] In determining whether “good cause” has been established for sealing records, a court must balance the public interest in disclosure in a particular case against the benefits to be derived by the parties from confidentiality (Matter of Twentieth Century Fox Film Corp., 190 AD2d 483).
As to the question of public interest, the Court disagrees with movants’ characterization of this case as a simple fee dispute of little or no concern to others. On the contrary, awareness of allegations of misconduct on the part of a corporate fiduciary which administers myriad trusts and estates and a prominent attorney who specializes in the field is critical to consumers of fiduciary services and the general public.[6] This is particularly so where the estate involved is that of the widow of a world famous artist consisting largely of works of art which he created. (Cf., Griffin v Scudder, Stevens & Clark, NYLJ, June 28, 1991, at 22, cols 3, 4 [“The court is likely in any event to recognize a greater public right to know when the affairs of (prominent persons) are at issue than in cases of anonymous citizens”].)
Against this compelling public interest, then, the Court must weigh the benefits to be derived from confidentiality. The mere preference for confidentiality is clearly not sufficient to tip the balance, “[n]or is the desire of a corporation to protect its reputation, stature, or image.” (Griffin v Scudder, Stevens & Clark, supra, at 22, col 4.)
The parties moving to seal argue that disclosure of the allegations against the Lawyer and the Bank would defeat their expectations of confidentiality and thereby discourage the settlement of private disputes by other parties in the future. Settlement of lawsuits is, of course, a practice to be encouraged, but not at any cost. One of the purposes of the codification of the anti-sealing rule was to curtail the disfavored practice where sealing became a condition of settlement and courts were not sufficiently protective of the public interest in the openness of court proceedings. Furthermore, in this case movants’ alleged expectation of confidentiality is unjustified. *848 As previously stated, the settlement in the Supreme Court proceeding, although confidential, expressly reserved to the executors the right to object to the fees in this Court on any ground.
Based on the foregoing, the Court finds that the allegations contained in the answer are not barred from consideration and that good cause for sealing the record has not been established.

. Although there appears to be some dispute between the parties as to whether the Supreme Court proceedings were ever actually sealed, this Court’s investigation reveals that they were not. The documents containing the allegations of misconduct were not filed in Supreme Court.

. In response to the Court’s query as to why the Court was not apprised of the existence of these allegations the executors state that when the proposed settlement of the probate contest was presented to the Court a “full recitation” of the evidence to support the allegations of the invalidity of the 1988 will was not made so as not to hinder their ability to prove their case if the settlement was not approved. The executors also claim that in the course of the Supreme Court accounting proceeding additional evidence of misconduct was uncovered which is now being presented to the Court. These explanations are not responsive. They fail to explain why this Court was not *845 informed of charges of gross misconduct when it was asked to approve a settlement which included, inter alia, the discharge of the preliminary executors from liability and approval of payment of their commissions.

. At this juncture, vacatur of the probate decree is not under consideration. (See, Matter of Dittmar, 154 Misc 28.)

. This is not a situation where as a result of a settlement there can be no finding on which a fee may be denied to lawyers for a fiduciary out of estate funds. (Compare Matter of Iskyan, 167 Misc 2d 492, with Estate of Blank, NYLJ, June 21, 1999, at 34, col 3.)

. The public’s entitlement to have open court proceedings has been described as one of “constitutional dimension” (Danco Labs. v Chemical Works, 274 AD2d 1).

. Section 216.1 (a) was enacted at least in part in response to concerns that sealing settled tort cases deprived the public of information that might alert it to possible defects in consumer products (Matter of Twentieth Century Fox Film, supra).