■ DENNIS RADDER, Respondent, v CSX TRANSPORTATION, INC., Appellant. [893 NYS2d 725]—

Memorandum: Plaintiff commenced this action pursuant to the Federal Employers' Liability Act ([FELA] 45 USC § 51 *et seq.*) seeking damages for injuries he sustained during the course of his employment with defendant, CSX Transportation, Inc. (CSX). Plaintiff retained the law firm of Kantor & Godwin, PLLC (K&G) to represent him in the action. While plaintiff's action was pending, a second CSX employee, William Pauley, was injured at work and he too retained K&G to represent him in a personal injury action against CSX. Shortly before plaintiff's action went to trial and without notice to or the consent of CSX, K&G interviewed Pauley concerning plaintiff's case. During the course of that interview, Pauley disclosed to K&G, as he previously had disclosed to the attorneys for CSX, that on the day of plaintiff's accident he had forged an inspection report related to the piece of equipment that had caused plaintiff's injuries. Before Pauley was called as a witness at trial, CSX moved to preclude his testimony, contending that K&G had violated the attorney disciplinary rules then in effect by interviewing Pauley. Supreme Court denied that motion, as well as a subsequent motion for a mistrial and the post-trial motion of CSX seeking a new trial and, inter alia, suppression of the information that allegedly was improperly obtained by plaintiff's attorneys. The jury returned a verdict in favor of plaintiff, awarding him damages of, inter alia, $550,000 for past pain and suffering and $1 million for future pain and suffering, to cover a period of 24.1 years. The court granted that part of the post-trial motion of CSX to set aside the award for future pain and suffering and, upon the stipulation of plaintiff, the court reduced that award to $650,000.

CSX contends on appeal that K&G violated Code of Professional Responsibility former DR 7-104 (a) (1) (22 NYCRR 1200.35 [a] [1]) and former DR 5-105 (b) through (d) (22 NYCRR 1200.24 [b]-[d]), and that those violations warranted suppression of the information improperly obtained by plaintiff's attorneys. We reject that contention. Generally, "absent some constitutional, statutory, or decisional authority mandating the suppression of otherwise valid evidence, such evidence will be

admissible [in a civil action] even if procured by unethical means" (*Heimanson v Farkas*, 292 AD2d 421, 422 [2002]; *see Nordhauser v New York City Health & Hosps. Corp.*, 176 AD2d 787, 791 [1991]; *see generally Sackler v Sackler*, 15 NY2d 40, 43-44 [1964]). Here, there is no constitutional, statutory or case law authority mandating the suppression of Pauley's otherwise valid testimony, and thus the only basis for suppression of that testimony would be CPLR 3103 (c), which permits the suppression of "any disclosure under [article 31 that] has been improperly or irregularly obtained so that a substantial right of a party is prejudiced."

Contrary to the contention of plaintiff, our review is not limited to whether the court abused its discretion. It is well settled that, where discretionary determinations concerning discovery and CPLR article 31 are at issue, this Court "is vested with the same power and discretion as [Supreme Court, and thus] the Appellate Division may also substitute its own discretion *even in the absence of abuse*" (*Brady v Ottaway Newspapers*, 63 NY2d 1031, 1032 [1984] [emphasis added]; *see Andon v 302-304 Mott St. Assoc.*, 94 NY2d 740, 745 [2000]). Here, however, we conclude that there was neither an abuse nor an improvident exercise of discretion.

Former DR 7-104 (a) provided in relevant part that "[d]uring the course of the representation of a client a lawyer shall not: (1) Communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized to do so." We conclude that, at the time of plaintiff's accident, Pauley was an employee deemed to be a party represented by the attorneys for CSX (*see Niesig v Team I*, 76 NY2d 363, 374 [1990]), but that at the time he was interviewed by K&G he was not. Indeed, by then, Pauley was no longer an employee of CSX (*see Muriel Siebert & Co., Inc. v Intuit Inc.*, 8 NY3d 506, 511 [2007]; *see also* Labor Law § 2 [5]). When he was interviewed by K&G, Pauley had been on long-term illness status for over three years, he was receiving disability benefits instead of wages, and his benefits were being paid by the Railroad Retirement Board, not by CSX (*cf. Rostocki v Consolidated Rail Corp.*, 19 F3d 104, 106 [1994]).

Based on our determination that Pauley was not a current employee of CSX when he was interviewed by K&G, we conclude that there was no violation of former DR 7-104 (a) (1), and thus there is no need to address plaintiff's contention that the interview was otherwise authorized by FELA (*see* 45 USC § 60).

CSX further contends that K&G violated former DR 5-105 (b) through (d) because it was representing two clients with differing interests. We reject that contention as well. When K&G initially began to represent both plaintiff and Pauley, there was no apparent conflict. After Pauley disclosed that he forged a document that was critical to plaintiff's case, however, K&G was placed in a position in which it was required to impugn Pauley's credibility in order to strengthen plaintiff's case. Doing so necessarily affected the credibility of Pauley in his own personal injury action. "[A]ttorneys historically have been strictly forbidden from placing themselves in a position where they must advance, or even appear to advance, conflicting interests" (*Greene v Greene*, 47 NY2d 447, 451 [1979]). Nevertheless, even assuming that K&G had an impermissible conflict of interest, we conclude that any breach of duty would be to K&G's clients (*see e.g. Ulico Cas. Co. v Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 AD3d 1, 9-10 [2008]), and the remedy for the breach of that duty would be an award of damages to the clients (*see id.* at 10; *see also Tabner v Drake*, 9 AD3d 606, 610 [2004]), or disqualification of counsel (*see e.g. Greene*, 47 NY2d at 450; *Applehead Pictures LLC v Perelman*, 55 AD3d 348 [2008]). Neither remedy was sought in this action.

In any event, even assuming that there was evidence that was "improperly or irregularly obtained," we conclude that no substantial right of CSX was prejudiced (CPLR 3103 [c]). The evidence of Pauley's forgery was previously known to the attorneys for CSX, it was not privileged and it could have been exposed in the normal course of discovery (*see e.g. Levy v Grandone*, 8 AD3d 630 [2004], *lv dismissed* 5 NY3d 746 [2005], *rearg denied* 5 NY3d 850 [2005]; *Gutierrez v Dudock*, 276 AD2d 746 [2000]; *cf. Lipin v Bender*, 84 NY2d 562, 568-569 [1994], *rearg denied* 84 NY2d 1027 [1995]). Thus, the court properly denied the motions of CSX to preclude Pauley's testimony, to declare a mistrial, and to set aside the verdict and for a new trial in which the improperly obtained evidence would be suppressed.

CSX further contends that the award of damages for past and future pain and suffering should be reduced because they "deviate[ ] materially from what would be reasonable compensation" (CPLR 5501 [c]). As plaintiff correctly contends, however, the appropriate standard for determining whether an award of damages should be reduced is the federal standard, which provides that jury awards should not be disturbed unless they "are so excessive as to shock [the] judicial conscience" (*Hotaling v CSX Transp.*, 5 AD3d 964, 970 [2004] [internal quotation marks omitted]; *see Palmer v CSX Transp., Inc.* [appeal No. 2], 68

AD3d 1626 [2009]; *Cruz v Long Is. R.R. Co.*, 22 AD3d 451, 454 [2005], *lv denied* 6 NY3d 703 [2006]; *Poole v Consolidated Rail Corp.*, 242 AD2d 966, 967-968 [1997], *lv denied* 91 NY2d 908 [1998]).

Based on our review of awards in cases involving similar injuries (*see Hotaling*, 5 AD3d at 970; *Nairn v National R.R. Passenger Corp.*, 837 F2d 565, 568 [1988]), we conclude that the award of $550,000 for past pain and suffering, which is intended to cover a period of four years, does not shock the judicial conscience (*see e.g. Baez v New York City Tr. Auth.*, 15 AD3d 309 [2005]; *Cabezas v City of New York*, 303 AD2d 307 [2003]; *Bernstein v Red Apple Supermarkets*, 227 AD2d 264 [1996], *lv dismissed* 89 NY2d 961 [1997], *rearg denied* 89 NY2d 1030 [1997]; *Guillory v Nautilus Real Estate*, 208 AD2d 336 [1995], *appeal dismissed and lv denied* 86 NY2d 881 [1995]). Nor does the award of $650,000 for future pain and suffering, which is intended to cover a period of 24.1 years, shock the judicial conscience when compared to cases involving similar injuries (*see e.g. Guillory*, 208 AD2d 336 [1995]; *Van Deusen v Norton Co.*, 204 AD2d 867 [1994]). Present—Hurlbutt, J.P., Smith, Centra, Green and Pine, JJ.