OPINION OF THE COURT
Richter, J.
The issue before us in this appeal is whether, under section 216.1 (a) of the Uniform Rules for Trial Courts (22 NYCRR 216.1 [a]), the motion court had good cause to seal and keep from public disclosure a set of exhibits submitted by plaintiff in opposition to a motion to dismiss the complaint. Defendants-respondents moved to seal the documents, alleging that they contained confidential business information, were improperly obtained by plaintiff and were irrelevant to the action. Intervenor-appellant, a journalist who had been reporting on this action, opposed the motion and argued that the public had a strong interest in inspecting the documents and that defendants-respondents had not established the requisite good cause to seal them. The motion court agreed with defendants-respondents and issued an order sealing the exhibits. We now reverse and find that defendants-respondents failed to meet their burden to justify sealing the documents.
Plaintiff Mitchell Mosallem was the executive vice-president and director of graphics services for defendant Grey Global Group, Inc., a leading international advertising agency. In spring 2001, the Antitrust Division of the United States Department of Justice commenced an investigation into allegations of bid-rigging and payment of kickbacks in connection with Grey’s awarding business to print vendors. Federal prosecutors ultimately secured 22 indictments against Grey employees, including Mosallem, various printing firms, and their clients.
The 11-count indictment against Mosallem charged him with fraud, conspiracy and other crimes. According to the indict *347 ment, Mosallem had rigged bids so that a third-party vendor would be awarded contracts to supply services for Grey’s clients; the vendor, in turn, would pay Mosallem kickbacks of cash, goods and services for securing the contracts. On April 8, 2003, Mosallem entered into a plea agreement in which he pleaded guilty to each count of the indictment. On November 13, 2003, Mosallem was sentenced to a prison term of 70 months.
Two years later, Mosallem brought this action against Grey, its predecessor, successor and parent entities, and several Grey executives (hereinafter defendants).[1] In his pro se complaint, Mosallem alleged that bid-rigging, kickbacks and other corrupt practices were endemic to the operating culture at Grey. According to the complaint, defendants had engaged in a cover-up to insulate Grey senior management from criminal liability by giving the false impression that Mosallem, on his own, had masterminded the corrupt practices at Grey. In particular, Mosallem alleged that defendants manipulated and withheld information in response to government subpoenas, suborned peijury by witnesses and leaked confidential information to the government. Mosallem claimed that he received a substantially heavier prison sentence for his crimes because he was deemed to have been the ringleader of the corruption at Grey.
On March 22, 2006, defendants moved to dismiss the complaint pursuant to CPLR 3211 (a). Mosallem filed an affidavit in opposition on April 24, 2006. On or about September 25, 2006, Mosallem mailed 44 documents to the trial court and asked that the court accept them as exhibits to his previously filed opposition papers. Mosallem argued that defendants would not be prejudiced because the documents were already referred to in his affidavit. The record does not reflect that defendants ever objected to Mosallem’s submission of the documents. Nor, at the time of the submission, did defendants file a motion to seal the exhibits. In view of Mosallem’s pro se status, the court accepted the late filing as part of Mosallem’s opposition to the motion.
Several weeks later, on October 23, 2006, intervenor Jim Edwards, a senior editor at Brandweek magazine, wrote letters to the trial court and the clerk’s office seeking access to the entire case file. Brandweek is a business magazine whose readers include employees and clients of advertising agencies like Grey. *348 Edwards had been reporting on the case for Brandweek and had written on Mosallem’s allegations about corruption at Grey. In his letters to the court, Edwards stated that he had reason to believe that Mosallem had made submissions that were not contained in the public file in the clerk’s office. It is undisputed that there was no sealing order in place at this time.
On October 25, 2006, the court sent a letter to the parties informing them of Edwards’s request for the case file and asking whether any party intended to move for sealing. On November 10, 2006, defendants moved pursuant to 22 NYCRR 216.1 to seal the documents submitted by Mosallem. On March 12, 2008, with no decision on the sealing motion having been rendered, Edwards moved for an order directing the Mosallem exhibits be made available for public inspection. In a decision entered June 5, 2009, the court granted the sealing motion and issued an order directing the clerk to seal the 44 documents submitted by Mosallem.[2] During the extended period the motion was sub judice, the documents were kept in the court’s chambers and not made available to the public.
Under New York law, there is a broad presumption that the public is entitled to access to judicial proceedings and court records (Mancheski v Gabelli Group Capital Partners, 39 AD3d 499, 501 [2007]; Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V., 28 AD3d 322, 324 [2006]; Danco Labs, v Chemical Works of Gedeon Richter, 274 AD2d 1, 6 [2000]). This State has “long recognized that civil actions and proceedings should be open to the public in order to ensure that they are conducted efficiently, honestly, and fairly” (Matter of Brownstone, 191 AD2d 167, 168 [1993]). Thus, section 4 of the Judiciary Law requires that, with certain exceptions not applicable here, “[t]he sittings of every court within this state shall be public, and every citizen may freely attend the same.” Likewise, sections 255 and 255-b of the Judiciary Law mandate that court records and docket books be available to the public.
The right of access to court proceedings and records also is firmly grounded in the common law, “and the existence of the correlating common-law right to inspect and copy judicial records is beyond dispute” (Gryphon Dom. VI, LLC, 28 AD3d at 324 [internal quotation marks and citations omitted]). We have recognized the broad constitutional presumption, arising from *349 the First and Sixth Amendments, as applied to the states by the Fourteenth Amendment, that both the public and the press are generally entitled to have access to court proceedings (id.; Danco Labs., 274 AD2d at 6).
The public right to access, however, is not absolute (Danco Labs., 274 AD2d at 6), and public inspection of court records has been limited by numerous statutes. Thus, for example, restrictions have been placed on access to Family Court records (Family Ct Act § 166), records in matrimonial actions (Domestic Relations Law § 235), sealed records in criminal cases (CPL 160.50), adoption proceeding records (Domestic Relations Law § 114) and proceedings seeking disclosure of HIV-related information (Public Health Law § 2785 [3]).
In addition to the statutory exceptions to public access, a court is empowered to seal court records pursuant to section 216.1 (a) of the Uniform Rules for Trial Courts (22 NYCRR 216.1 [a]). That rule states that
“[e]xcept where otherwise provided by statute or rule, a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as of the parties.”
Although the term “good cause” is not defined, “a sealing order should clearly be predicated upon a sound basis or legitimate need to take judicial action” (Gryphon Dom. VI, LLC, 28 AD3d at 325). “A finding of ‘good cause’ presupposes that public access to the documents at issue will likely result in harm to a compelling interest of the movant” (Mancheski, 39 AD3d at 502). “Confidentiality is clearly the exception, not the rule” (Matter of Hofmann, 284 AD2d 92, 93-94 [2001]), and the party seeking to seal court records has the burden to demonstrate compelling circumstances to justify restricting public access (Mancheski, 39 AD3d at 502; Danco Labs., 274 AD2d at 8).
Applying these principles, we conclude that defendants have failed to meet their substantial burden of establishing good cause to seal the exhibits submitted by Mosallem. First, we reject defendants’ assertion that there is no “legitimate public concern” in ensuring that the documents remain available for inspection (see Matter of Crain Communications v Hughes, 135 AD2d 351, 352 [1987], affd 74 NY2d 626 [1989]). We have previ *350 ously observed that the public has a powerful interest in open court proceedings (Danco Labs., 274 AD2d at 7; Matter of Hofmann, 284 AD2d at 94 [judicial proceedings are matters of legitimate public concern]).
The public’s interest in this case, both at the time the sealing motion was made and even now, is substantial.' Mosallem is a former executive of a major worldwide advertising agency who was convicted of federal crimes involving corporate corruption. In this action, he alleges that senior executives in the agency engaged in a coverup of corrupt corporate practices at Grey, which is a matter of public concern (see Danco Labs., 274 AD2d at 7 [“The public interest in openness is particularly important on matters of public concern, even if the issues arise in the context of a private dispute”]). The fact that many of the documents are over a decade old does not eviscerate the public’s interest in them. The press’s interest in the documents is a continuing one, as evidenced by the repeated attempts to gain access to them and the pursuit of this appeal.
Defendants have failed to meet their burden of demonstrating compelling circumstances that would outweigh the public’s interest here. The sealing motion below was accompanied solely by the affirmation of an attorney who did not purport to have any personal knowledge of the documents. No affidavits were submitted by any of the defendants, the authors of the documents or the participants in the events recorded therein. Thus, there is no evidence in the record as to why the documents are so confidential or sensitive that public access to them should be restricted (see L.K. Sta. Group, LLC v Quantek Media, LLC, 20 Misc 3d 1142[A], 2008 NY Slip Op 51827[U] [Sup Ct, NY County 2008] [defendants’ failure to address specific documents was fatal to request to seal]).
Merely because some of the documents were marked “confidential” or “private” “is not controlling on the court’s determination whether there is good cause to seal the record” (Eusini v Pioneer Elecs. [USA], Inc., 29 AD3d 623, 626 [2006]). This Court has generally been reluctant to allow the sealing of court records and has authorized sealing only in strictly limited circumstances (Gryphon Dom. VI, LLC, 28 AD3d at 324, 325). In the business context, we have allowed for sealing where trade secrets are involved (see Matter of Crain Communications, 135 AD2d at 352), or where the release of documents could threaten a business’s competitive advantage (see Matter of Twentieth Century Fox Film Corp., 190 AD2d 483, 488 [1993]). Here, *351 however, there is no showing that the documents contain any trade secrets or other revelations that might harm Grey’s competitive standing in the industry. Nor have defendants shown that the documents, most of which are more than 10 years old, would cause harm to Grey’s present-day business.
A number of the exhibits submitted by Mosallem are copies of what defendants admit are nonprivileged documents that were produced by Grey in 2002 in response to federal grand jury subpoenas. None of these documents are transcripts of any grand jury proceedings, nor do they reveal witness information or statements. Rather, most, if not all, of the documents appear to be Grey’s business records created several years before the issuance of the subpoenas. The motion court’s concerns that releasing these exhibits would invade federal grand jury secrecy are misplaced. The mere fact that the documents were produced in response to federal grand jury subpoenas does not establish that they were ever introduced before the grand jury (see e.g. United States v Phillips, 843 F2d 438, 441 [11th Cir 1988] [financial documents obtained by grand jury subpoena but never submitted to grand jury not matters occurring before grand jury and not subject to secrecy]). Nor is there any showing that the documents were in any way used in the federal grand jury’s deliberative process (see e.g DiLeo v Commissioner of Internal Revenue, 959 F2d 16, 19-20 [2d Cir 1992], cert denied 506 US 868 [1992]; Conte v County of Nassau, 2009 WL 1362784, 2009 US Dist LEXIS 41348 [ED NY 2009]; United States v Manko, 1997 WL 107440, 1997 US Dist LEXIS 2578 [SD NY 1997]).
Defendants also argue that sealing is appropriate because the exhibits could be misconstrued by the public and the press. In particular, they express concern that information in the documents could potentially humiliate them and harm their business reputations. However, they have not alleged facts from which any specific harm can be established, let alone harm that outweighs the importance of public access to the records. In any event, neither the potential for embarrassment or damage to reputation, nor the general desire for privacy, constitutes good cause to seal court records (see Liapakis v Sullivan, 290 AD2d 393, 394 [2002]; Matter of Benkert, 288 AD2d 147 [2001]; Matter of Hofmann, 284 AD2d at 94).
Despite defendants’ purported concerns about release of the documents, they did not act with haste in moving to seal. There is nothing in the record to indicate that, at the time Mosallem first submitted the exhibits to the court, they objected in any *352 way or sought to keep the documents out of the public domain. They did not ask the court to reject the exhibits on the ground that they were sent months after the motion to dismiss had been fully submitted. Nor did they make a sealing motion at that time. Rather, the motion to seal came nearly two months later. Although not determinative, defendants’ failure to take prompt action undermines their claims that the documents contain confidential business information, would invade federal grand jury secrecy or would cause unspecified harm to their business reputations.
Defendants raise a number of arguments about Mosallem’s alleged wrongful conduct in obtaining the documents and his bad faith in submitting them to the court. None of these provides a basis to seal the record. Defendants argue that sealing is required because Mosallem did not rightfully possess the exhibits. In particular, they allege that Mosallem obtained the subpoenaed documents during the course of his criminal proceedings and that they should have been returned when the criminal case ended because they are Grey’s property (see United States v Interstate Dress Carriers, Inc., 280 F2d 52, 54 [2d Cir I960]). They further claim that the remaining documents were misappropriated by Mosallem while he worked at Grey.
However, no factual showing was made that Mosallem improperly took documents during the course of his employment. As noted earlier, the sealing motion was only accompanied by an affirmation of an attorney who did not purport to have any personal knowledge of the underlying facts, or of Grey’s document retention policies. Nor was an affidavit submitted from anyone with knowledge about Grey’s employment policies and procedures. With regard to the subpoenaed documents, defendants offer scant evidence that Mosallem’s possession of them was wrongful.
In any event, how Mosallem may have come to be in possession of the documents does not warrant granting the sealing motion. There is nothing in rule 216.1 (a) that addresses whether a court can consider a litigant’s wrongful conduct or bad faith in determining whether public access should be restricted. Some useful guidance can be gleaned from analogous principles governing admissibility of wrongfully obtained evidence. “New York follows the common-law rule that the admissibility of evidence is not affected by the means through which it is obtained” (Heimanson v Farkas, 292 AD2d 421, 422 [2002]; *353 see Stagg v New York City Health & Hosps. Corp., 162 AD2d 595, 596 [1990]; see also Prince, Richardson on Evidence § 4-104 [Farrell 11th ed]). Thus, in the absence of some constitutional, statutory, or decisional authority requiring the suppression of otherwise valid evidence (see e.g. CPLR 4506), such evidence is admissible in a civil action even if obtained by wrongful means (Radder v CSX Transp., Inc., 68 AD3d 1743, 1744-1745 [2009]; Stagg, 162 AD2d at 596; see generally Sackler v Sackler, 15 NY2d 40 [1964]).
Since wrongfully obtained evidence is nevertheless admissible, we see no reason why the documents should be sealed merely because they were obtained improperly. In this case, we should not be drawn into the ancillary inquiry of whether Mosallem may have engaged in wrongdoing or committed tortious conduct. This is not to say that defendants could not pursue some other remedy to redress the alleged wrongful retention of documents. But denying public access to the court records here is not the proper solution where no tangible harm or independent statutory basis for sealing has been established, even if the documents are Grey’s property.
We reject the argument that the exhibits should be sealed because they purportedly bear no relevance to the motion to dismiss. Defendants did not raise this concern when Mosallem belatedly mailed the documents to the court after the motion was fully submitted. Nor did they provide an affidavit from anyone with knowledge to identify the documents and explain why they were not pertinent to the issues raised. In light of this omission, it is difficult to understand defendants’ argument that the documents lack relevance. In any event, neither rule 216.1 (a), nor the case law addressing it, allows for sealing of part of a court file simply because a document may be irrelevant. Nor does the fact that the action was ultimately dismissed provide a basis to restrict public access. This argument, taken to its logical extreme, would allow for sealing of any case that was dismissed.
Finally, Edwards complains about the court’s delay in deciding the motion because it resulted in de facto sealing during the extended period the motion was sub judice. Edwards raises a legitimate concern about the lengthy delay here. Sealing motions should be decided expeditiously because undue delays in ruling on such motions implicate the public’s right of access to court records (see Lugosch v Pyramid Co. of Onondaga, 435 F3d 110, 126-127 [2d Cir 2006]).
*354 Accordingly, the order of Supreme Court, New York County (Ira Gammerman, J.H.O.), entered June 5, 2009, which, insofar as appealed from, granted defendants-respondents ’ motion to seal the exhibits submitted by plaintiff in opposition to defendants-respondents ’ motion to dismiss the complaint, should be reversed, on the law, without costs, the motion denied, the sealing order vacated and the Clerk of this Court directed to remit a copy of the unsealed exhibits.
Mazzarelli, J.E, McGuire, DeGrasse and Freedman, JJ., concur.
Order, Supreme Court, New York County entered June 5, 2009, reversed, on the law, without costs, the motion denied, the sealing order vacated and the Clerk of this Court directed to remit a copy of the unsealed exhibits.

. Plaintiff also named as a defendant the law firm that represented the Grey entities in the federal investigation. That firm is not a party to this appeal.

. In its decision, the court also dismissed the complaint with leave to re-plead the breach of contract claim against Grey Global Group, Inc. That part of the court’s order is not the subject of this appeal.