P.P.S. v C.J.G. (2026 NY Slip Op 26036)

[*1]

P.P.S. v C.J.G.

2026 NY Slip Op 26036

Decided on March 6, 2026

Supreme Court, Westchester County

Hyer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 6, 2026
Supreme Court, Westchester County

P.P.S., Petitioner,

againstC.J.G., Respondent.

Index No. XXXXX

Petitioner: Lance H. Klein, Esq., Keane & Beane P.C., 445 Hamilton Avenue, 15th Floor, White Plains, New York 10601Respondent: Bryce K. Alvord, Esq., The Legal Aid Society of Westchester County, 150 Grand Street, Suite 100, White Plains, New York 10601

James L. Hyer, J.

The following documents were considered in connection with a motion by notice of motion of the Respondent, dated December 23, 2025, (hereinafter "Motion Sequence No. 2"), seeking the entry of an Order granting the following relief:
1. Striking the Petitioner's exhibits attached to the Petition filed under Article 63-A of Respondent's school academic, attendance and disciplinary records in accordance with CPLR Section 405;2. Precluding the use and admission as evidence of the Respondent's academic, attendance and disciplinary school records at the time of the hearing to be held under Article 63-A of the CPLR;3. Precluding the use and admission as evidence of any unfounded and/or unsubstantiated investigations alleging Respondent's involvement with respect to drugs, gang or criminal activity at the time of the hearing to be held under Article 63-A of the CPLR; and4. For such other and further relief as to this Court seem just and proper.
PAPERS    
DOC. NOS.
Notice of Motion/Affirmation of Respondent's Counsel/Exhibits A-B [FN1]
1-4Relevant Factual and Procedural HistoryOn December 8, 2025, this proceeding was commenced by Petitioner with the filing of an application for a temporary extreme risk protection order (hereinafter "Application"),[FN2]
accompanied by a request for judicial intervention.[FN3]
The Application asserts that Petitioner has standing to commence the proceeding as the principal or other chief officer or their designee named in writing of any school in which the respondent is currently enrolled or has been enrolled in the past six months; that the Respondent is [Redacted] years of age having a date of birth of [Redacted]; and makes the following allegations:
"Petitioner alleges that the above-named respondent 
 is likely to engage in conduct that would result in serious harm to self or others as defined in MHL § 9.39(a) and petitions the Court to issue a temporary extreme risk protection order against the respondent pursuant to CPLR § 6342 based upon the facts and circumstances set forth in the following sworn application justifying the issuance of the order, to wit: Petitioner believes that the respondent is likely to engage in conduct that would result in serious harm to self or others because the respondent has engaged in, exhibited, or committed the following behavior(s) or act(s) [check all that apply]:* * *A pending charge or conviction for an offense involving the use of a weapon* * *Evidence of recent or ongoing abuse of controlled substances or alcohol* * *Evidence of recent acquisition of a firearm, rifle, shotgun or other deadly weapon or dangerous instrument, or any ammunition thereof* * *Other [specify any other relevant factors the Court should consider]: Charges relating to grand theft auto and few other recent arrests. We are aware of 5 recent arrests in total."The Application further asserts the following facts and circumstances Petitioner claims justify the issuance of an extreme risk protection order:
"[Redacted] is a student at [Redacted] High School. He was arrested this week for armed robbery, criminal possession of a weapon and attempted grand theft auto. The weapon used was a loaded 3-D printed fire arm and he was also in possession of an additional [additional] round of ammunition and zip ties. We have a report of him breaking into a [*2]student's house and stealing an expensive jacket on the same day as the armed robbery. He is believed to be gang involved. He is known to be drug involved. Police were recently called to his home for a potential overdose. There is concern, given his likely gang involvement, substance use, poor decision making and access to weapons that he will bring a weapon to school and/or seek revenge against any student(s) who may be cooperating with police and/or school investigations."Annexed to the Application, are eight exhibits which the Petitioner requests be filed under seal "as they contain medical, mental health, or other sensitive records and information" which Petitioner identifies as "news article related to armed robbery, policy flyer related to grand theft auto investigation, student discipline, student grades, student attendance" (hereinafter collectively "Petitioner's Exhibits").[FN4]

Petitioner's first exhibit (hereinafter "Petitioner's Exhibit 1"),[FN5]
is a letter dated October 17, 2023, from principal [Redacted] of the [Redacted] High School (hereinafter "School"), to [Redacted], which includes the following:
"This letter is to advise you that I intend to suspend your child, [Redacted], out of school, effective Thursday, October 19 through Friday October 20, 2023. This out of school suspension is to last for two school days, for engaging in the following conduct that endangers the safety, morals, health or welfare of others:Threatening and intimidating two separate students on Monday, October 16, 2023. The first incident took place in the HS Gym at approximately 12:45 p.m. The second incident took place in a classroom at approximately 2:15 p.m."Petitioner's second exhibit (hereinafter "Petitioner's Exhibit 2"),[FN6]
is a letter dated December 3, 2025, from principal [Redacted] of the School, to [Redacted], which includes the following:
"This letter is to advise you that I intend to suspend your child, [Redacted], out of school, effective Thursday, December 4 through Wednesday, December 10, 2025. This out of school suspension is to last for five school days, for engaging in the following conduct:On November 10, 2025 at approximately 3:55 p.m., off school grounds, [Redacted] engaged in conduct that endangers the safety, morals, health, or welfare of others by engaging in off-campus misconduct. Off-campus misconduct is conduct that interferes with or can reasonably be expected to substantially disrupt the educational process in the school.On December 1, 2025, at approximately 8:00 p.m., off school grounds, [Redacted] engaged in conduct that endangers the safety, morals, health, or welfare of others by engaging in off-campus misconduct. Off-campus misconduct is conduct that interferes [*3]with or can reasonably be expected to substantially disrupt the educational process in the school."Petitioner's third exhibit (hereinafter "Petitioner's Exhibit 3"),[FN7]
is a School transcript pertaining to Respondent, regarding years 2022 through 2025; fourth exhibit (hereinafter "Petitioner's Exhibit 4")[FN8]
is a School report card pertaining to Respondent for 2025-2026; fifth exhibit (hereinafter "Petitioner's Exhibit 5")[FN9]
is a School student period attendance detail pertaining to the Respondent for the period of 2025-2026; sixth exhibit (hereinafter "Petitioner's Exhibit 6")[FN10]
is a School student period attendance detail pertaining to the Respondent for the period of 2024-2025; seventh exhibit (hereinafter "Petitioner's Exhibit 7")[FN11]
is a School student period attendance detail pertaining to the Respondent for the period of 2023-2024; eighth exhibit (hereinafter "Petitioner's Exhibit 8")[FN12]
is a School student period attendance detail pertaining to the Respondent for the period of 2022-2023.
On December 8, 2025, this Court [Rosa, M.][FN13]
entered the following: (1) notification of hearing for final extreme risk protection order, directing a hearing to be held on December 10, 2025, directing Petitioner to serve the notice and supporting papers upon Respondent by December 9, 2025;[FN14]
Order granting temporary extreme risk protection order pertaining to Respondent to remain in effect until March 31, 2026; granting a search order permitting any police agency to search for firearms, rifles and shotguns in Respondent's possession permitting a search of Respondent's person and the premises known as [Redacted];[FN15]
Order for background investigation in extreme risk protection order proceeding, directing the [Redacted] Police Department to conduct a background investigation and submit a written report to the Court and each party, regarding whether the respondent: has any prior criminal conviction for an offense involving domestic violence, use of a weapon, or other violence; has any currently pending criminal charge or violation; is currently on parole or probation; possesses any registered firearms, rifles or shotguns; has been subject to any order of protection; and has violated or allegedly violated any order of protection.[FN16]

On December 9, 2025, Respondent's counsel filed a notice of appearance, along with a request for an adjournment of the scheduled hearing, which was denied by order.[FN17]

On December 10, 2025, a conference was held before the undersigned wherein [*4]appearances were made by all counsel, after which a so-ordered court transcript was filed,[FN18]
reflecting that the hearing was adjourned to be held on December 12, 2025.
On December 12, 2025, a conference was held before the undersigned wherein all parties and counsel appeared, after which a so-ordered court transcript was filed (hereinafter "12/12/25 Transcript"),[FN19]
during which counsel agreed to an extension of the temporary extreme risk protection order pertaining to Respondent and this Court scheduled a hearing to commence on March 30, 2026, at 9:00 a.m. During the conference, the Court directed that any motions in limine be filed by January 19, 2026, with opposition filed by January 26, 2026.[FN20]
An order was entered that day providing the following directives:
"On December 12, 2025, a conference was held before the undersigned regarding the subject application for an extreme risk protection order (hereinafter "ERPO") wherein all parties and counsel appeared, after which the hearing regarding the ERPO application was adjourned and prehearing disclosure was scheduled as set forth herein-below.It is hereby ORDERED that:l. By January 16, 2026, each party is directed serve upon each other via overnight delivery the following: (l) Witness List for all witnesses to provide testimony at the hearing with the understanding that if witnesses are not disclosed they will precluded from testifying at the hearing; and (2) Exhibit List with copies of all exhibits to be utilized at the hearing with the understanding that if disclosure is not made pursuant to this directive exhibits will be precluded at hearing.2. To the extent either party files motions in limine, any such motions will be subject to the following briefing schedule:a. January 19, 2026, being the deadline for all parties to file any motions in limine with respect to the subject hearing;b. February 2, 2026, being the deadline to file opposition to any motions filed, with no cross-motions permitted and no reply submissions accepted; ***3. All parties and counsel shall appear in-person for a hearing to be held on March 30, 2026 at 9:00 a.m. with respect to the pending ERPO application.4. Unless specifically modified herein, all prior decisions and orders of this Court remain in effect."On December 23, 2025, Motion Sequence No. 2 was filed seeking the above-referenced relief.[FN21]
In support of the first two requests for relief included in Motion Sequence No. 2, Respondent's counsel asserts the following arguments in his affirmation in support:
"I make this affirmation in support of the within motion to strike and in limini more fully set forth in the annexed Notice of Motion.* * *The Respondent is a party to a proceeding brought against him under Article 63-A of the CPLR, brought by the Petitioner, upon information and belief, as if he were the subject of a Person In Need of Supervision (hereinafter 'PINS') Petition under Article 7 of the Family Court Act in the erroneous inclusion of his academic, attendance and disciplinary school records as exhibits to the Petition filed herein. The inclusion of these school records has violated of our client's right to privacy under both New York and Federal Law, as specifically codified under Family Education Rights and Privacy Act (hereinafter 'the FERPA') and the concomitant regulations, in that an 'emergency' does not exist by virtue of simply filing a civil action under Article 63-A of the Civil Practice Law and Rules (hereinafter 'CPLR'). The exhibits involving our client's academic, attendance and a disciplinary letter to outline a two-day suspension from school in no way satisfies the evidentiary burden of releasing these records in this filing because this is 'necessary to protect the health or safety of the student or other individuals' as required under Title 34 of Code of Federal Regulations Part 99.36.' School officials may 'non-consensually' release these records to law enforcement in connection with a 'health or safety emergency' [w]hen an articulable and significant threat exists — anything from an active shooter to a hazardous weather event to a chemical spill ' See the FERPA GUIDE written by the Bureau of Justice within the Department of Justice and related publications attached herewith as Exhibit A. Here, there is no such articulable and significant threat that exists, in that there was an actual and active shooting scenario at the Respondent's school in connection with the proceeding filed herein. Rather, the Respondent was alleged to be in possession of a firearm in a separate criminal proceeding that did not involve any student or staff member of the school where Respondent attends. As the Respondent's academic, attendance and disciplinary school records contain no information that could in anyway support to demonstrate that a 'significant threat to the health or safety of a student [at the School or other individuals],' exists these records should be stricken from the Petition because they serve as 'scandalous and prejudicial matter unnecessarily inserted in a pleading' in accordance with CPLR Section 405."In support of the third request for relief included in Motion Sequence No. 2, Respondent's counsel asserts the following arguments:
"The Respondent further seeks to preclude the use and/or admission of any unfounded and/or unsubstantiated investigations by the Petitioner of the Respondent alleging drug, gang or criminal activities because this would constitute inadmissible hearsay that would not satisfy any of the exceptions for the admission of such evidence and would be akin to self-serving statements or acts of a party or by one in privity as they would be offered in support of the Petitioner's position at the hearing and would allow the Petitioner to manufacture favorable evidence. See Latimore v. Burrows, 163 NY 7, at 9-10 (1900) (holding '[t]hat the evidence objected to should have been excluded seems obvious. It was in effect admitting in his favor proof of the plaintiff's own act, or an act to which he was an essential party. If such evidence was admissible, a party might establish the extent of the liability of another, or the absence of liability on his part, by proving his acts with a third person, as to which the other party could produce no proof. It is clear that a party may not prove his self-serving declarations in his own behalf.')Thus, this evidence should be excluded from the hearing, in that this is the type of evidence that although it may be relevant, its 'probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence,' as contemplated under the Rule 403 of the Federal Rules of Evidence."On January 16, 2026, Respondent's counsel filed a request for an adjournment of the current motion schedule and for pre-hearing disclosure which was not granted.[FN22]

On February 17, 2026, an order was entered directing all parties and counsel to appear to for a conference to be held on February 19, 2026.[FN23]

On February 19, 2026, a conference was held before the undersigned wherein all counsel appeared and party appearances were waived, after which an order was entered on February 20, 2026,[FN24]
providing the following:
"On February 19, 2026, a status conference was held before the undersigned, regarding the pending application for an extreme risk protection order, wherein the parties agreed on consent to permit Respondent to re-file a motion in limine previously filed on December 23, 2025, and rejected by the County Clerk's Office that day (hereinafter "Motion Sequence No. 2"). Consequently, the Respondent was directed to re-file Motion Sequence No. 2 without changing any of the substance of the application, only correcting the filing deficiencies which caused its prior return, by February 19, 2026, and that the motion would be subject to the following briefing schedule: (l) February 26, 2026, being the deadline for Petitioner to file any answering submissions to Motion Sequence No. 2, with no reply submissions being accepted, no appearances being required, also being the return dale of Motion Sequence No. 2.On February 19, 2026, after the conclusion of the status conference, Respondent re-filed Motion Sequence No. 2 in accordance with this Court's Order, however the return date selected by Respondent was March 19, 2026, not February 26, 2026 as previously directed by this Court.It is hereby ORDERED that:1. The new return date for Motion Sequence No. 2 is February 26, 2026.2. February 26, 2026 remains the deadline for Petitioner to file any answering submissions to Motion Sequence No. 2, with no reply submissions being accepted, no appearances being required, also being the return date of Motion Sequence No. 2.3. Unless specifically modified herein, all prior decisions and orders entered in this matter remain in full force and effect."On February 26, 2026, Petitioner's counsel filed a letter submission pertaining to Motion Sequence No. 2, which was not considered by this Court when making a determination with respect to the relief sought in Motion Sequence No. 2 as the submission did not comport with the requirements of applicable statutes and court rules [FN25]
(see CPLR § 2214(b); see also NYCRR §202.8 ["The answering party shall serve copies of all affidavits and briefs as required by CPLR 2214. Affidavits shall be for a statement of the relevant facts, and briefs shall be for a statement of the relevant law."]; Simms v. North Shore University Hosp., 192 AD2d 700 [2d Dept 1993] [unsworn letter did not constitute evidentiary proof in admissible form to serve as answering submission to motion]).
No further submissions were made with respect to Motion Sequence No. 2.

Legal Analysis
 A. Respondent's request for the entry of an order striking the Petitioner's exhibits attached to the Petition consisting of Respondent's school academic, attendance and disciplinary records; and precluding the use and admission as evidence of the Respondent's academic, attendance and disciplinary school records at the time of hearing.
[1] Extreme Risk Protection OrdersPursuant to CPLR Article 63-a, a petitioner may commence a proceeding to obtain against the designated respondent an extreme risk protection order (hereinafter "ERPO") and upon the filing of such application, in the event the receiving court finds "probable cause to believe the respondent is likely to engage in conduct that would result in serious harm to himself, herself or others, as defined in paragraph one or two of subdivision (a) of section 9.39 of the mental hygiene law,"[FN26]
the court may issue a temporary ERPO prohibiting the respondent from purchasing, possessing or attempting to purchase or possess a firearm, rifle or shotgun.[FN27]
Prior to the issuance of a temporary ERPO, the court must consider "any relevant factors" of the respondent including, but not limited to, the following:
"(a) a threat or act of violence or use of physical force directed toward self, the petitioner, or another person;(b) a violation or alleged violation of an order of protection;(c) any pending charge or conviction for an offense involving the use of a weapon;(d) the reckless use, display or brandishing of a firearm, rifle or shotgun;(e) any history of a violation of an extreme risk protection order;(f) evidence of recent or ongoing abuse of controlled substances or alcohol;(g) evidence of recent acquisition of a firearm, rifle, shotgun or other deadly weapon or dangerous instrument, or any ammunition therefor; or(h) evidence of recent acts of aggravated cruelty to animals as defined in section three hundred fifty-three-a of the agriculture and markets law.In considering the factors under this subdivision, the court shall consider the time that has elapsed since the occurrence of such act or acts and the age of the person at the time of the occurrence of such act or acts.For the purposes of this subdivision, 'recent' means within the six months prior to the date the petition was filed."[FN28]Notably, "[t]he application of the petitioner and supporting documentation, if any, shall set forth the factual basis for the request and probable cause for issuance of a temporary order."[FN29]
In the event of the issuance of a temporary ERPO, the court must schedule a hearing on the application and possible issuance of an ERPO, no sooner than three nor more than six business days after service of the temporary order; and, if a temporary ERPO is not issued, a hearing shall be held no later than ten business days after the date on which such application is served on the respondent.[FN30]
When scheduling a hearing, the court must enter an order directing the appropriate law enforcement agency to prepare a background investigation report as to if respondent:
"(a) has any prior criminal conviction for an offense involving domestic violence, use of a weapon, or other violence;(b) has any criminal charge or violation currently pending against him or her;(c) is currently on parole or probation;(d) possesses any registered firearms, rifles or shotguns; and(e) has been, or is, subject to any order of protection or has violated or allegedly violated [*5]any order of protection."[FN31]
The statute speaks directly to both petitioner's burden of proof that must be met for the entry of an ERPO, as well as the evident and testimony that may be considered by the court:
"At the hearing pursuant to subdivision one of this section, the petitioner shall have the burden of proving, by clear and convincing evidence, that the respondent is likely to engage in conduct that would result in serious harm to himself, herself or others, as defined in paragraph one or two of subdivision (a) of section 9.39 of the mental hygiene law. The court may consider the petition and any evidence submitted by the petitioner, any evidence submitted by the respondent, any testimony presented, and the report of the relevant law enforcement agency submitted pursuant to subdivision nine of section sixty-three hundred forty-two of this article. The court shall also consider the factors set forth in subdivision two of section sixty-three hundred forty-two of this article."[FN32]
In the event that a determination is made that an ERPO is to be entered, the duration may only be for the period of one year, from the date of entry of the temporary ERPO or the date of entry of the ERPO, whichever date is earlier and upon the issuance of such order:
"(i) any firearm, rifle or shotgun removed pursuant to a temporary extreme risk protection order or such extreme risk protection order shall be retained by the law enforcement agency having jurisdiction for the duration of the order, unless ownership of the firearm, rifle or shotgun is legally transferred by the respondent to another individual permitted by law to own and possess such firearm, rifle or shotgun;(ii) the supreme court shall temporarily suspend any existing firearm license possessed by the respondent and order the respondent temporarily ineligible for such a license;(iii) the respondent shall be prohibited from purchasing or possessing, or attempting to purchase or possess, a firearm, rifle or shotgun; and(iv) the court shall direct the respondent to surrender any firearm, rifle or shotgun in his or her possession in the same manner as set forth in subdivision five of section 530.14 of the criminal procedure law."[FN33]
When initially adopted in 2019, the bill jacket set forth the following justification for the statute:
"Family and household members are often the first to know when someone is experiencing a crisis or exhibiting dangerous behavior. They may even report their fears to law enforcement, but in New York, as in many other states, law enforcement officers may not have the authority to intervene based on the evidence they are provided, sometimes resulting in preventable tragedies, including interpersonal gun violence or [*6]suicide involving a gun. In 2014, California became the first state in the nation to enact a law empowering family members and law enforcement to petition a court to have individuals' access to guns temporarily suspended when they are at risk of harming themselves or others. In 2016, Washington State enacted similar measures through a ballot initiative. Law providing a procedure for the removal of firearms from at-risk individuals have existed for years in Indiana, and studies have shown that a similar provision of Connecticut law has resulted in a measurable reduction in suicide rates. Enacting extreme risk protection orders here would keep New Yorkers safe while respecting due process rights."[FN34]
In 2023, a New York Sponsors Memorandum seeking to amend the statute to change the definition of petitioner by replacing "police officer" with "police agency", noted the following justification reflecting the status of ERPO proceedings commenced in New York State since the adoption of the statute just four years earlier:
"In 2019, New York State's Extreme Risk Protection Order (ERPO) legislation when into effect, which provides a legal avenue to temporarily restrict access to firearms for those who pose a serious risk of harm to themselves or others. While police officers, district attorney's and schools can commence an ERPO, the vast majority of ERPOs are being filed by law enforcement. In 2020, judges issued protection orders against 255 people across New York. This year, in just over four months, the number of individuals subjected to emergency or temporary risk protection orders topped 2,120. And between 2020 and last November, State Police had seized 2,521 firearms under emergency protection orders a figure that does not include seizures made by more than 150 other New York police agencies."[FN35]
While the Sponsors Memorandum notes that the majority of ERPO proceedings are commenced by law enforcement officials, the statute permits filings by school officials including those in the role of superintendent of schools, as is the petitioner in this proceeding:
"a school administrator as defined in section eleven hundred twenty-five of the education law,[FN36] or a school administrator's designee, of any school in which the person against [*7]whom the order is sought is currently enrolled or has been enrolled in the six months immediately preceding the filing of the petition;
* * *For purposes of this article, a school administrator's designee shall be employed at the same school as the school administrator and shall be any of the following who has been designated in writing to file a petition with respect to the person against whom the order is sought: a school teacher, school guidance counselor, school psychologist, school social worker, school nurse, or other school personnel required to hold a teaching or administrative license or certificate, and full or part-time compensated school employee required to hold a temporary coaching license or professional coaching certificate."[FN37]
In 2024 the Appellate Division, Second Department held that the ERPO statute was constitutional, noting that, "CPLR article 63—A contains ample procedural safeguards and bears a substantial relationship to the government's interest in protecting the public at large and preventing crime and serious injury" (see R.M. v. C.M., 226 AD3d 153 [2d Dept 2024]). While there are few ERPO proceedings commenced by school officials which have resulted in published decisions, those that have been published reflect the varied testimony and evidence presented to the reviewing court by the petitioner to meet the burden prescribed in the statute. In one such proceeding wherein an ERPO was sought to be entered against a student by a school administrator, upon receipt of testimony (from a teacher's assistant, social worker, and principal), in addition to documentary evidence, the court granted the ERPO taking into consideration not only the incidents which were specified in the application, but the respondent's mental health and [*8]history of violent acts at the school:
"Here, several red flags exist that are extremely alarming. The teacher's assistant, for example, testified that she **819 overheard Respondent say that he wanted to shoot up the school *1080 and that he wanted to shoot himself at graduation. Further, while Respondent denied that he said that he wanted to shoot up the school, Respondent has not denied that he said that he wanted to kill himself using a gun. In fact, the social worker testified that Respondent admitted this to her.Equally alarming is Respondent's disturbing belief that killing himself would make everyone happy. This demonstrates that he has an extremely distorted perspective on reality. When combined with the additional testimony that Respondent suffers from depression and other mood disorders, the Court is extremely fearful of what may occur if Respondent were permitted access to a weapon.In addition, the testimony also reveals that Respondent has engaged in violent acts recently in the past, including destroying school property and harassing other students. He reportedly started two fires inside, one about three months prior to the hearing. Within just one to two weeks prior to saying that he wanted to kill himself, Respondent reportedly hit another student, told another student to kill himself, and vandalized the bathroom. On the day he mentioned his plans for a shooting, Respondent was observed holding a red liquid drink like a gun, pointing it like a gun towards another student, and squirting it around his desk. He also reportedly squirted the red liquid in other areas of the school on that same day, as well as on the previous day, in a manner that simulated blood splatter from a gunshot wound, causing the principal to reasonably fear for the safety of the School.While the Court truly wants to believe Respondent's grandmother that Respondent is a good kid, the Court cannot ignore Respondent's recent obsession with death, killing, and blood, which is extremely disturbing. His conduct has not only been reckless, but potentially criminal as well (see Penal Law § 490.20 [making a terroristic threat]; see also Penal Law § 240.78 [making a threat of mass harm, effective June 6, 2022]). His conduct sadly demonstrates that he has formulated an intention to bring a gun onto School property and that he has created a disturbing fantasy about splattering blood onto the walls of his School. Such conduct, while hopefully just a temporary stage in his life, demonstrates extremely poor judgment and a lack of maturity.Accordingly, the Court finds that clear and convincing evidence exists that Respondent is likely to engage in conduct that *1081 would result in serious harm to himself and others. The Court therefore grants the petitions."[FN38]
[2] The Family Educational Rights and Privacy Act of 1974The Family Educational Rights and Privacy Act of 1974 (hereinafter "FERPA") adopted as Federal law by Congress establishes privacy rights in education records of students by conditioning Federal funding to educational agencies or institutions with compliance with the provisions of the statute (see 20 U.S.C. § 1232g(a)(1)(A), (B); see also Matter of Terry D., 81 N.Y.S.2d 1042 [1993]). " The Federal Family Educational Rights and Privacy Act of 1974 [known as "FERPA"] does not provide for a private right of action; rather, it provides Federal Government funding will be cut off if there is a violation of FERPA" (see Rome City School Dsit. Disciplinary Hearing v. Grifasi, 10 Misc 3d 1034 [Sup. Ct. Oneida Cty, 2005]).
FERPA defines "student" as "any person with respect to whom an educational agency or institution maintains education records or personally identifiable information, but does not include a person who has not been in attendance at such agency or institution" (see 20 U.S.C. § 1232 g(a)(6)); defines "educational agency or institution" as "any public or private agency or institution which is the recipient of funds under any applicable program" (see 20 U.S.C. § 1232 g(a)(3)); and generally defines "education records" of a student as "those records, files, documents, and other materials which (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution" (see 20 U.S.C. § 1232g(a)(4)(A)).
While consent to release education records of the student is usually required to be in compliance with FERPA, such consent being given by either the parent or student, exceptions exist permitting educational agencies or institutions to release information without consent including "subject to regulations of the Secretary, in connection with an emergency, appropriate persons if the knowledge of such information is necessary to protect the health or safety of the student or other persons" (see 20 U.S.C. § 1232g(a)(I); see also, People v. Owens, 188 Misc 2d 200 [Sup. Ct. Monroe Cty. 2001]; In re W and V, 50 Misc 3d 1220(a) [Fam. Ct. Bronx Cty. 2014]; Ellis v. Cleveland Municipal School Dist., 309 F. Supp.2d 2019 [U.S.D.C., N.D. Ohio, Eastern Division 2004] ["FERPA itself recognizes the important public policy of protecting student safety by providing an explicit exemption for the disclosure of 'personally identifiable information from an educational record to appropriate parties' if it is necessary to protect the health or safety of the student or others"]).
Turning to the regulations of the Secretary of the United States of America Department of Education (hereinafter "Department"), they provide the following directives pertaining to the release of student education records when necessary to protect the health or safety of the student or other persons:
"(a) An educational agency or institution may disclose personally identifiable information from an education record to appropriate parties, including parents of an eligible student, in connection with an emergency if knowledge of the information is necessary to protect the health or safety of the student or other individuals.* * *(c) In making a determination under paragraph (a) of this section, an educational agency or institution may take into account the totality of the circumstances pertaining to a threat to the health or safety of a student or other individuals. If the educational agency or institution determines that there is an articulable and significant threat to the health or safety of a student or other individuals, it may disclose information from education records to any person whose knowledge of the information is necessary to protect the health or safety of the student or other individuals. If, based on the information available [*9]at the time of the determination, there is a rational basis for the determination, the Department will not substitute its judgment for that of the educational agency or institution in evaluating the circumstances and making its determination."[FN39]
These regulations are further clarified upon review of the Federal Register, pertaining to such amendments being made to clarify the conditions applicable to disclosures in health and safety emergencies, with the following summary and explanation for such changes:
"The Secretary amends our regulations implementing the Family Educational Rights and Privacy Acy (FERPA), which is section 444 of the General Education Provisions Act.* * *These changes clarify permissible disclosures to parents of eligible students and conditions that apply to disclosures in health and safety emergencies.* * *We believe that the regulatory changes adopted in these final regulations provide clarification on many important issues that have arisen over time with regard to how FERPA affects decisions that school officials have to make on an everyday basis. Educational agencies and institutions face considerable challenges, especially with regard to maintaining safe campuses, protecting personally identifiable information in student's education records, and responding to requests for data on student progress. These final regulations, as well as the discussion on various provisions in the preamble, will assist school officials in addressing these challenges in a manner that complies with FERPA and protects the privacy of students' education records."[FN40]
The amendments included a change that would permit the release of student education records without consent in emergency situations, also providing greater discretion by removing the previous "strict construction" standard that had been previously required:
"Section 99.36(c) eliminates the previous requirement that paragraphs (a) and (b) of this section be "strictly construed" and provides instead that, in making a determination whether a disclosure may be made under the 'health or safety emergency' exception, an educational agency or institution may take into account the totality of the circumstances pertaining to a threat to the health or safety of a student or other individuals. The new provision states that if there is an articulable and significant threat to the health or safety of the student or other individuals, an educational agency or institution may disclose information to appropriate parties.As we indicated in the preamble to the NPRM ['notice of proposed rule making'], we believe paragraph (c) provides greater flexibility and deference to school administrators so they can bring appropriate resources to bear on a circumstance that threatens the health or safety of individuals. 73 FR 15574, 15589. In that regard, paragraph (c) provides that the Department will not substitute its judgment for that of the agency or institution if, based on the information available at the time of the determination there is [*10]a rational basis for the agency's or institution's determination that a health or safety emergency exists and that the disclosure was made to appropriate parties.We do not agree that removal of the "strict construction" standard weakens FERPA or erodes privacy protections. Rather, the changes appropriately balance the important interests of safety and privacy by providing school officials with the flexibility to act quickly and decisively when emergencies arise. Schools should not view FERPA's 'health or safety emergency' exception as a blanket exception for routine disclosures of student information but as limited to disclosures necessary to protect the health or safety of a student or another individual in connection with an emergency."[FN41]
Clarification was further provided as to what would qualify as an emergency as set forth in the amended regulations:
"In response to the comment about what would constitute an emergency, FERPA permits disclosure '* * * in connection with an emergency * * * to protect the health or safety of the student or other persons.' 20 U.S.C. 1232g(b)(1)(I). We note that the word 'protect' generally means to keep from harm, attack, or injury. As such, the statutory text underscores that the educational agency or institution must be able to release information from education records in sufficient time for the institution to act to keep persons from harm or injury. Moreover, to be 'in connection with an emergency' means to be related to the threat of an actual, impending, or imminent emergency, such as a terrorist attack, a natural disaster, a campus shooting, or the outbreak of an epidemic such as e-coli. An emergency could also be a situation in which a student gives sufficient, cumulative warning signs that lead an educational agency or institution to believe the student may harm himself or others at any moment. It does not mean the threat of a possible or eventual emergency for which the likelihood of occurrence is unknown, such as would be addressed in emergency preparedness activities."[FN42]
The term "articulable and significant threat" as used in the amended regulations were also explained as follows:
"The requirement that there must be an 'articulable and significant threat' does not mean that the threat must be verbal. It simply means that the institution must be able to articulate what the threat is under § 99.36 when it makes and records the disclosure.In that regard, the words 'articulable and significant' are adjectives modifying the key noun 'threat.' As such, the focus is on the threat, with the question being whether the threat itself is articulable and significant. The word 'articulable' is defined to mean 'capable of being articulated.' http:// www.merriam-webster.com/dictionary/articulable. This portion of the standard simply requires that a school official be able to express in words what leads the official to conclude that a student poses a threat. The other half of the standard is the word 'significant,' which means 'of a noticeably or measurably large [*11]amount.' http://www.merriam-webster.com/dictionary/significant. Taken together, the phrase 'articulable and significant threat' means that if a school official can explain why, based on all the information then available, the official reasonably believes that a student poses a significant threat, such as a threat of substantial bodily harm, to any person, including the student, the school official may disclose education records to any person whose knowledge of information from those records will assist in protecting a person from that threat."[FN43]
Finally, with respect to the term "appropriate persons" as used in FERPA, the following clarification was provided:
"On its face, FERPA permits disclosure to 'appropriate persons if the knowledge of such information is necessary to protect the health or safety of the student or other persons.' 20 U.S.C. 1232g(b)(1)(I). FERPA does not require that the person receiving the information be responsible for providing the protection. Rather, the focus of the statutory provision is on the information itself: The 'health or safety emergency' exception permits the institution to disclose information from education records in order to gather information from any person who has information that would be necessary to *74839 provide the requisite protection. Thus, for example, an educational institution that reasonably believes that a student poses a threat of bodily harm to any person may disclose information from education records to current or prior peers of the student or mental health professionals who can provide the institution with appropriate information to assist in protecting against the threat. Moreover, the institution may disclose records to persons such as law enforcement officials that it determines may be helpful in providing appropriate protection from the threat. An educational agency or institution may also generally disclose information under § 99.36 to a potential victim and the parents of a potential victim as 'other individuals' whose health or safety may need to be protected.[FN44]
[3] New York State Laws & Regulations Regarding Privacy of Student RecordsWhile not addressed by the Respondent within the pending application, the State of New York has its own laws and regulations intended to protect the privacy and confidentiality of student records and information, which incorporate by reference and work in concert with the directives outlined in FERPA.
- New York State Education Law
New York State Education Law (hereinafter "EDUC") § 2-d generally provides directives for the protection of student data state-wide, including but not limited to: the appointment of a chief privacy officer; the requirement to provide public access to the parents bill of right for data privacy and security; data collection transparency and restrictions; data security standards; directives regarding a breach and unauthorized access of student data and records; and, implementation and enforcement of the statute.
Pertinent portions of EDUC § 2-d read as follows:
"1. Definitions. As used in this section the following terms shall have the following meanings:* * *d. "Personally identifiable information," as applied to student data, means personally identifiable information as defined in section 99.3 of title thirty-four of the code of federal regulations implementing the family educational rights and privacy act, section twelve hundred thirty-two-g of title twenty of the United States code, and, as applied to teacher or principal data, means "personally identifying information" as such term is used in subdivision ten of section three thousand twelve-c of this chapter.e. "School" means any public elementary or secondary school, universal pre-kindergarten program authorized pursuant to section thirty-six hundred two-e of this chapter, an approved provider of preschool special education, any other publicly funded pre-kindergarten program, a school serving children in a special act school district as defined in section four thousand one of this chapter, an approved private school for the education of students with disabilities, a state-supported school subject to the provisions of article eighty-five of this chapter, or a state-operated school subject to the provisions of article eighty-seven or eight-eight of this chapter.f. "Student" means any person attending or seeking to enroll in an educational agency.i. "Student data" means personally identifiable information from student records of an educational agency.* * *3. Parents bill of rights for data privacy and security.a. A parents bill of rights for data privacy and security shall be published on the website of each educational agency and shall be included with every contract an educational agency enters into with a third party contractor where the third party contractor receives student data or teacher or principal data.* * *(1) A student's personally identifiable information cannot be sold or released for any commercial purposes;(2) Parents have the right to inspect and review the complete contents of their child's education record;(3) State and federal laws protect the confidentiality of personally identifiable information, and safeguards associated with industry standards and best practices, including but not limited to, encryption, firewalls, and password protection, must be in place when data is stored or transferred;* * *4. Data collection transparency and restrictions.a. The department shall promote the least intrusive data collection policies practicable that advance the goals of improving academic achievement, empowering parents with information and advancing efficient and effective school operations while minimizing the collection and transmission of personally identifiable information.* * *d. The department may only require districts to submit personally identifiable information, including data on disability status and student suspensions, where such release is required by law or otherwise authorized under the family educational rights and privacy act, 20 U.S.C. section 1232g, and the personal privacy protection law." (see, EDUC § 2-d [emphasis added]).- 8 NYCRR § 121.1 [Regulations of the Commissioner of Education — Part 121]
Similarly, the New York State Regulations of the Commissioner of Education (hereinafter "8 NYCRR") § 121, titled: Strengthening Data Privacy and Security in NY State Educational Agencies to Protect Personally Identifiable Information, sets forth additional rules related to the collection and security of student data.
Pertinent portions of 8 NYCRR § 121 read as follows:
"Section 121.1. Definitions. As used in this Part, the following terms shall have the following meanings:* * *(f) Education Records means an education record as defined in the Family Educational Rights and Privacy Act and its implementing regulations, 20 U.S.C. 1232g and 34 C.F.R. Part 99, respectively.* * *(j) FERPA means the Family Educational Rights and Privacy Act and its implementing regulations, 20 U.S.C. 1232g and 34 C.F.R. Part 99, respectively.* * *(m) Personally Identifiable Information, as applied to student data, means personally identifiable information as defined in section 99.3 of Title 34 of the Code of Federal Regulations implementing the Family Educational Rights and Privacy Act, 20 U.S.C 1232g * * *(q) Student Data means personally identifiable information from the student records of an educational agency." (8 NYCRR § 1.21.1).* * *"Section 121.2. Educational agency data collection transparency and restrictions.(a) Educational agencies shall not sell personally identifiable information nor use or disclose it for any marketing or commercial purpose or facilitate its use or disclosure by any other party for any marketing or commercial purpose or permit another party to do so.* * *(d) Except as required by law or in the case of educational enrollment data, school districts shall not report to the department the following student data elements: (1) juvenile delinquency records; (2) criminal records; (3) medical and health records; and, (4) student biometric information" (see, 8 NYCRR § 1.21.2).* * *"Section 121.5. Data security and privacy standard.* * *(c) Each educational agency's data security and privacy policy must also address the data privacy protections set forth in Education Law §2-d (5)(b)(1) and (2) as follows:(1) every use and disclosure of personally identifiable information by the educational agency shall benefit students and the educational agency (e.g., improve academic achievement, empower parents and students with information, and/or advance efficient and effective school operations).(2) personally identifiable information shall not be included in public reports or other documents.(d) An educational agency's data security and privacy policy shall include all the protections afforded to parents or eligible students, where applicable, under FERPA and the Individuals with Disabilities Education Act (20 U.S.C. 1400 et seq.), and the federal regulations implementing such statutes " (see, 8 NYCRR § 1.21.5 [emphasis added]).It is apparent from a plain reading of both EDUC § 2-d and 8 NYCRR § 1.21 (hereinafter "New York Student Privacy Laws"), that the applicable state-wide statutes and regulations focus on the protection of (both physically and electronically maintained) personally identifiable information of both students and staff who are employed and enrolled in any New York State school, as well as collection methods for such data, including the use of third-party companies to gather and maintain same. However, New York Student Privacy Laws do not speak directly to the intentional release of such personally identifiable information, including, but not limited to, permissions and restrictions associated with same, and instead cite directly to FERPA in order to define certain terms included within its own laws and rules, and to establish the standard by which personal student information may be released and disseminated, or as an exception to any state-wide law which would curtail the release of such information.
Said another way, New York Student Privacy Laws provide further directives regarding maintaining and releasing of private student records, while using FERPA to define certain terms used within laws and rules, and to provide regulation on the release of such records. As such, it does not appear that the New York Student Privacy Laws provide Respondent with any further support for the relief requested but was nonetheless reviewed herein for completeness.
[4] Application to Instant CaseHere, when evaluating if FERPA is a basis for the relief sought by Respondent to strike Petitioner's Exhibits and preclude their use as evidence at the scheduled hearing, this Court first notes that the applicable case law cited herein-above has held that this statute provides no private right of action. Instead, FERPA only pertains to Federal funds that may be withheld from an educational agency or institution if they fail to comply with the statutory mandates. Nonetheless, for the reasons set forth herein, this Court determines that FERPA would not provide support for the relief sought by Respondent, as his consent was not needed for the release of his education records contained in Petitioner's Exhibits. Notably, before providing this Court's application of FERPA to the facts of the instant Application, it will address Respondent's initial requests to [*12]strike and preclude Petitioner's Exhibits through other legal basis.
- Request to Strike Petitioner's Exhibits As "Scandalous or Prejudicial" Pursuant to CPLR § 405Initially, Respondent seeks to strike Petitioner's Exhibits as "scandalous" or "prejudicial" pursuant to Civil Practice Law and Rules (hereinafter "CPLR") § 405(a), which reads as follows:
"§ 405 Correction of defects in papers.(a) Motion to correct. Either party may move to cure a defect or omission in the record, or to strike scandalous or prejudicial matter unnecessarily inserted in a pleading, or for a more definite statement of a pleading which is so vague or ambiguous that he cannot reasonably be required to frame a response."Generally, "CPLR § 405(a) authorizes either party to make a corrective motion on any of three grounds: (1) to cure a defect or omission in the record; (2) to strike scandalous or prejudicial matter unnecessarily inserted in a pleading; or (3) for a more definite statement of a pleading" (see CPLR § 405(a) McKinney's Practice Commentaries, V.C. Alexander). While neither the statute itself nor the relevant case law specifically define what constitutes "scandalous" or "prejudicial", such alleged material included in either a pleading or petition must rise to the level to require a re-pleading or re-filing of the subject petition. Here, for the reasons set forth herein-below in review of the contents of Petitioner's Exhibits and in applying same to the facts of the pending Application, this Court determines that Petitioner's Exhibits do not rise to the level of "scandalous" or "prejudicial" information which would require this Court to strike them from the Application. Consequently, this branch of Respondent's motion is denied. 
- Request For PreclusionRespondent seeks to preclude the use of Petitioner's Exhibits at the time of the subject hearing, only citing to FERPA as a basis for such preclusion. Respondent fails to cite to any further statue or court rule in support of the request for preclusion of these specific documents. Generally, CPLR § 3126 sets forth the manner within which penalties, including preclusion, may be directed in the event a litigant fails to comply with discovery directives:
"If any party, or a person who at the time a deposition is taken or an examination or inspection is made is an officer, director, member, employee or agent of a party or otherwise under a party's control, refuses to obey an order for disclosure or wilfully fails to disclose information which the court finds ought to have been disclosed pursuant to this article, the court may make such orders with regard to the failure or refusal as are just, among them:1. an order that the issues to which the information is relevant shall be deemed resolved for purposes of the action in accordance with the claims of the party obtaining the order; or2. an order prohibiting the disobedient party from supporting or opposing designated claims or defenses, from producing in evidence designated things or items of testimony, or from introducing any evidence of the physical, mental or blood condition sought to be determined, or from using certain witnesses; or3. an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or any part thereof, or rendering a judgment by default against the disobedient party" [emphasis added].Here, clearly there is no allegation of a failure to disclose, nor is there any other basis outside of FERPA which Responded relies upon for preclusion of Petitioner's Exhibits. As will be discussed in more detail herein-below, this Court determines that FERPA, being the only basis for preclusion provided by Respondent, would not provide support for preclusion of Petitioner's Exhibits.
- Applying FERPA
Applying the statute to the facts before this Court, Respondent's instant motion is largely silent as to any allegations that the facts of this proceeding comport with the necessary definitions that are set forth in FERPA (i.e., that Petitioner is an "educational agency or institution"; that Respondent is a "student"; or that Petitioner's Exhibits are "education records" of Respondent). However, upon review of the Application, Petitioner confirms Respondent meets the definition of "student", and following a review of Petitioner's Exhibits, this Court determines that they all meet the definition of "education records" of Respondent. Finally, with respect to the question of if Petitioner is an "educational agency or institution", evaluating Respondent's motion in the most favorable light, it is inferred that Respondent is alleging that Petitioner meets this definition, by the nature of the allegations and relief sought therein, and as Petitioner failed to file an answering submission, they have thus failed to dispute same.
The Court must now determine if Petitioner was authorized to release to this Court for use in this proceeding Petitioner's Exhibits without the consent of Respondent (or his parent or lawful guardian) to protect the health or safety of the Respondent or other persons, and must answer this question in the affirmative. While Respondent's counsel asserts that this exception is inapplicable as "here is not such articulable and significant threat that exists, in that there was an actual and active shooting scenario at the Respondent's school in connection with the proceeding filed herein," this argument belies the regulations of the Department and the explanations pertaining to same set forth in the Federal Register.
These regulations were altered in 2008 to provide more deference and flexibility to educators. The Federal Register noted that there need only be a "rational basis" when taking into consideration "the totality of the circumstances" when making a determination if there is an articulable and significant threat to the health and safety of the student or other individuals. The Federal Register further noted that the term "articulable and significant threat" required only that "a school official be able to express in words what lead the official to conclude that a student poses a threat, and that when determining what could qualify as an emergency that "[a]n emergency could also be a situation in which a student gives sufficient, cumulative warning signs that lead an educational agency or institution to believe the student may harm himself or others at any moment." In this proceeding, the Application sets forth allegations pertaining to the Respondent providing a rational basis for Petitioner, upon consideration of the totality of the circumstances, to determine an emergency to exist due to Respondent being an articulable and significant threat, due to his cumulative warning signs that led Petitioner to believe that Respondent may harm himself or others.
Further, while Respondent's counsel asserts, "[a]s the Respondent's academic, attendance and disciplinary school records contain no information that could in anyway support to demonstrate that a 'significant threat to the health or safety of a student [at the School or other [*13]individuals],' exists these records should be stricken from the Petition," this again is not supported by FERPA or the regulations or explanations set forth in the Federal Register. As noted above, when making a determination if an emergency or articulable and significant threat exists, the educators must examine cumulative warning signs and the totality of the circumstances which includes the Respondent's performance at the School including academic, attendance and disciplinary records. Similar to Anonymous, Id., where that court considered the respondent student's disciplinary history (i.e., hitting another student, vandalizing a bathroom, setting fires, etc.), here Petitioner's Exhibits are within the scope of what this Court may consider at hearing.
Finally, in the event of the determination that an emergency exists permitting the non-consensual release of student education records, the FERPA statute and regulations do not define the term "appropriate persons," but the Federal Register comments that "the institution may disclose records to persons such as law enforcement officials that it determines may be helpful in providing appropriate protection from the threat." Accordingly, this Court determines that as set forth in FERPA the term "appropriate persons" includes a court with respect to ERPO filings.
The Department in promulgating the regulations addressed herein has clearly weighed and considered the legislative intent of FERPA to keep the public safe while respecting the privacy rights of students. Those regulations provide for the non-consensual release of educational records to appropriate persons, in this case being the Court, by educational institutions that have a rational basis to determine an emergency exists following identification of an articulable and sufficient threat; and, the privacy considerations regarding the release of a student's identifiable educational records as set forth within FERPA. Consequently, this Court must follow FERPA and the Department's regulations and denies Respondent's requests for the entry of an Order striking the Petitioner's Exhibits attached to the Petition; and, precluding the use and admission as evidence Petitioner's Exhibits at the time of hearing.
The Court has made this determination having found the need to protect the public through the ERPO statute, with inclusive due process protections afforded to Respondent in the proceedings commenced pursuant to the statute, to outweigh the privacy concerns pertaining to Respondent's educational records. This determination is supported by the above analysis of FERPA, the corresponding federal regulations, and explanations set forth in the Federal Register, which confirm that the facts presented in this proceeding are of the very nature which constitute an emergency, triggering Petitioner to engage in non-consensual release of education records to protect the Respondent, school community, and greater public. Notwithstanding this determination, the Respondent's privacy concerns as to his education records are not cast aside by this Court, but may be addressed in a manner beyond the specific relief sought by Respondent's counsel, through the potential entry of a sealing order. Prior to granting such relief, this Court must engage in an examination and weighing of the competing interests of public access to court records versus the privacy concerns of Respondent, which it will do herein.
B. Respondent's request for the entry of an order precluding the use and admission as evidence of any unfounded and/or unsubstantiated investigations alleging Respondent's involvement with respect to drugs, gang or criminal activity at the time of the hearing to be held under Article 63-A of the CPLR.In support of this relief, Respondent's counsel cites two legal authorities including Rule 403 of the Federal Rules of Evidence and one case. Turning first to Rule 403 of the Federal [*14]Rules of Evidence, this is inapplicable as the scope of the Federal Rules of Evidence, set forth in the first article of those rules, notes: "[t]hese rules apply to proceedings in United States courts,"[FN45]
not the courts of the State of New York.
Next, Respondent's counsel cites a decision entered by the Court of Appeals, Latimer v. Burrows, 163 NY 7 [1900], which held that self-serving statements of a party should not be permitted and subsequent cases have noted this rule is important due to "the danger of a defendant manufacturing evidence favorable to her own position" (see People v. B.N., 79 Misc 3d 740192 [Sup Ct Cayuga Cty 2023]). However, as is the case here as the Petitioner's Exhibits consisting of education records of Respondent are business records of Petitioner, to the extent that any statements made therein are determined to be self-serving, that would not serve as a basis alone to preclude their admissibility but would be a factor considered in determining the appropriate weight to provide it (see Bishin v. New York Cent. R. Co., 20 AD2d 921 [2d Dept 1964] ["Finally, it was error to exclude an employee's report of the railroad grade crossing accident solely on the ground that it was self-serving. The statute (CPLR Rule 4518; former Civil Practice Act, § 374—a) renders admissible records made in the regular course of business; the statute makes no exception for records which also happen to be self-serving. It has been observed that the self-serving aspect of a record does not preclude its admissibility under the statute but is merely a consideration affecting the weight to be given to it (Publishers' Book Bindery v. Ziegelheim, 184 Misc. 559, 54 N.Y.S.2d 798)"]).
Beyond the legal authority cited by Respondent's counsel being inapplicable to the facts in this proceeding, these arguments disregard the very language of the ERPO statute which would itself prevent the relief requested from being granted. Initially, the petitioner is required to "set forth a factual basis for the request and probable cause for the issuance of a temporary order" after which the reviewing court must consider any relevant factors including those enumerated in the statute including:
"(a) a threat or act of violence or use of physical force directed toward self, the petitioner, or another person;(b) a violation or alleged violation of an order of protection;(c) any pending charge or conviction for an offense involving the use of a weapon;(d) the reckless use, display or brandishing of a firearm, rifle or shotgun;(e) any history of a violation of an extreme risk protection order;(f) evidence of recent or ongoing abuse of controlled substances or alcohol;(g) evidence of recent acquisition of a firearm, rifle, shotgun or other deadly weapon or dangerous instrument, or any ammunition therefor; or(h) evidence of recent acts of aggravated cruelty to animals as defined in section three hundred fifty-three-a of the agriculture and markets law."Further, the ERPO statute requires that a background investigation order be entered by the reviewing court upon commencement of an ERPO proceeding, directing that the appropriate law enforcement agency prepare a background investigation report as to if the respondent:
"(a) has any prior criminal conviction for an offense involving domestic violence, use of a weapon, or other violence;(b) has any criminal charge or violation currently pending against him or her;(c) is currently on parole or probation;(d) possesses any registered firearms, rifles or shotguns; and(e) has been, or is, subject to any order of protection or has violated or allegedly violated any order of protection."In this proceeding, Petitioner's Application contains allegations pertaining to Respondent which are material, relevant and necessary to this proceeding. Accordingly, this Court is required to consider them pursuant to the very language of the ERPO statute and rather than merely relying upon the information offered by the Petitioner, is required to obtain further necessary data from the law enforcement agency who is directed to produce to the Court the background investigation order which may augment, corroborate, disprove or otherwise clarify the information provided by Petitioner. 
While Respondent takes the position that the allegations made by Petitioner in the Application are "unfounded and/or unsubstantiated," Respondent's counsel may fully participate in the scheduled hearing, including but not limited to, objecting to the admission of evidence offered by Petitioner, engaging in cross-examination of witnesses called by Petitioner, calling witnesses for examination for Respondent, offering evidence, etc. It will then be the duty of this Court sitting as finder of fact, to provide the appropriate weight to exhibits admitted into evidence, and to engage in an assessment of credibility of any witnesses who have offered testimony, prior to making any final determination (see Sanchez v. Rexhepi, 30 N.Y.S.3d 170 [2d Dept 2016]).
Accordingly, based upon the foregoing, Respondent's request for the entry of an order precluding the use and admission as evidence of any unfounded and/or unsubstantiated investigations alleging Respondent's involvement with respect to drugs, gang or criminal activity at the time of the hearing to be held under Article 63-A of the CPLR, is hereby denied.
C. Other Relief."The court may grant relief that is warranted pursuant to a general prayer for relief contained in a notice of motion if the relief granted is not too dramatically unlike the relief sought, the proof offered supports it, and there is no prejudice to any party" (see USAA Federal Savings Bank v. Calvin, 145 AD3d 704 [2d Dept 2016]). Here, while Motion Sequence No. 2 does not include a specific prayer for relief for the sealing of the court records in this proceeding, this Court determines such relief to be not too dramatically unlike the relief sought, that the proof offered supports it, and that there is no prejudice to any party. Accordingly, this Court will proceed to review if such relief is warranted.
22 NYCRR §216.1 sets forth the basis wherein a trial court may order that records be sealed:
"(a) Except where otherwise provided by statute or rule, a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as of the parties. Where it appears necessary or desirable, the court may prescribe appropriate notice and opportunity to be heard.(b) For purposes of this rule, "court records" shall include all documents and records of any nature filed with the clerk in connection with the action. Documents obtained [*15]through disclosure and not filed with the clerk shall remain subject to protective orders as set forth in CPLR 3103(a)."The Appellate Division, Second Department has provided the following instruction on the manner within which a determination to seal court records must be made:
"New York law presumptively favors broad access by the public and the press to judicial proceedings and court records, placing the burden on the party favoring sealing to show a compelling interest that likely would be harmed by granting public access (see Mosallem v. Berenson, 76 AD3d 345, 348—349, 905 N.Y.S.2d 575; Mancheski v. Gabelli Group Capital Partners, 39 AD3d 499, 501—502, 835 N.Y.S.2d 595). However, 'the right of access is not absolute' (Danco Labs. v. Chemical Works of Gedeon Richter, 274 AD2d 1, 6, 711 N.Y.S.2d 419), and a court determining whether there is good cause for sealing court records (see 22 NYCRR 216.1[a] ) must weigh the competing interests of the public and the parties, authorizing the sealing only in the prudent exercise of the court's discretion (see Mancheski v. Gabelli Group Capital Partners, 39 AD3d at 502, 835 N.Y.S.2d 595)" (see O'Reilly v. McPhilmy, 167 AD3d 922 [2d Dept 2018]).In a decision entered just two months ago, in evaluating if a sealing order should be granted, a trial Court noted the importance of evaluation of the documents:
"Thus, the analysis turns on the nature and content of the documents, not the manner in which the materials are maintained. For example, good cause is demonstrated where i) genuine trade secrets may be disclosed (see Bernstein v On-Line Software Intern., Inc., 232 AD2d 336, 337 [1st Dept 1996]), ii) the 'identities of persons legitimately exposed to violence' may be revealed (Danco Labs., Ltd. v Chem. Works of Gedeon Richter, Ltd., 274 AD2d 1, 8 [1st Dept 2000]), or iii) to prevent 'impingement upon the privacy interests and welfare of [ ] minor children' (McPhilmy, 167 AD3d at 924). Sealing is not proper where disclosure would merely result in embarrassing allegations being made public (Matter of Hofmann, 284 AD2d at 94) or damage to defendants' reputations caused by plaintiff's allegations of unethical and criminal conduct (Liapakis v Sullivan, 290 AD2d 393, 394 [1st Dept 2002])" (see S.E. v. Diocese of Brooklyn, 88 Misc 3d 1210(A) [Sup. Ct. Kings Cnty 2026]).Sealing of records in an ERPO proceeding would be appropriate if confidential or other protected information is at risk (see Anonymous Detective at Westchester County Police v. A.A., 71 Misc 3d 810 (Sup Ct Westchester Cty 2021]). Here, the records at issue are the education records of Respondent who is a minor, and based upon the nature and content of those records, this Court finds that they are confidential in nature with protected information at risk requiring that a sealing order be entered.
Based upon the foregoing, a sealing order shall be entered pertaining to the Court records filed in this proceeding, including, but not limited to, the Respondent's education records contained in Petitioner's Exhibits, with the exception of any orders entered required by statute to be disseminated.
To the extent relief is not granted or otherwise addressed herein, it is hereby denied.
Accordingly, it is hereby:
ORDERED that Motion Sequence No. 2 is determined as set forth herein; and it is [*16]further
ORDERED that by March 9, 2026, Respondent's counsel shall serve a copy of this Order with Notice of Entry on Petitioner, via NYSCEF filing and e-mail, and file proof of service with the Court by March 9, 2026; and it is further
ORDERED that to the extent any relief requested is not granted herein, it is hereby denied.
The foregoing constitutes the Decision and Order of the Court.
Dated: March 6, 2026White Plains, New YorkENTER:HON. JAMES L. HYER, J.S.C.

Footnotes

Footnote 1:Note: No answering submissions were filed by Petitioner pertaining to Motion Sequence No. 2 despite a briefing schedule having been set by this Court as noted herein. Further, as this is proceeding was commenced by application, for NYSCEF purposes the Application is delineated as Motion Sequence No. 1, which results in the instant application being delineated as Motion Sequence No. 2.

Footnote 2:See, NYSCEF Doc. No. 1.

Footnote 3:See, NYSCEF Doc. No. 2.

Footnote 4:See, NYSCEF Doc. Nos. 3-10.

Footnote 5:See, NYSCEF Doc. No. 3.

Footnote 6:See, NYSCEF Doc. No. 4.

Footnote 7:See, NYSCEF Doc. No. 5.

Footnote 8:See, NYSCEF Doc. No. 6.

Footnote 9:See, NYSCEF Doc. No. 7.

Footnote 10:See, NYSCEF Doc. No. 8.

Footnote 11:See, NYSCEF Doc. No. 9.

Footnote 12:See, NYSCEF Doc. No. 10.

Footnote 13:Hon. Maria G. Rosa, J.S.C., as duty judge entered the initial temporary extreme risk protection order, background investigation order, and issued the ancillary documents pertaining to the initial Application. Thereafter, the undersigned was directed to preside over this proceeding.

Footnote 14:See, NYSCEF Doc. No. 11.

Footnote 15:See, NYSCEF Doc. No. 12.

Footnote 16:See, NYSCEF Doc. No. 13.

Footnote 17:See, NYSCEF Doc. Nos. 14-16.

Footnote 18:See, NYSCEF Doc. No. 24.

Footnote 19:See, NYSCEF Doc. No. 25.

Footnote 20:See, NYSCEF Doc. No. 25, 12/12/25 Transcript, Pg. 8:19-25-Pg. 7:1-2.

Footnote 21:See, NYSCEF Doc. Nos. 20-23.

Footnote 22:See, NYSCEF Doc. No. 26

Footnote 23:See, NYSCEF Doc. No. 27.

Footnote 24:See, NYSCEF Doc. No. 44.

Footnote 25:Notably, even if the Petitioner had filed this letter submission pursuant to motion requirements by applicable statutes and court rules, and this Court was permitted to consider such submission when making a determination as to the instant application, the document only addresses one prong of relief sought by Respondent, being the preclusion of Respondent's School records annexed as Petitioner's Exhibits. Petitioner's submission failed to address Respondent's other requests for relief in Motion Sequence No. 2.

Footnote 26:See, New York State Mental Hygiene Law 9.39 (a) ["Likelihood to result in serious harm" as used in this section shall mean: 1. substantial risk of physical harm to themself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that they are dangerous to themself, or 2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm"].

Footnote 27:See, CPLR § 6342(1).

Footnote 28:See, CPLR § 6342(2).

Footnote 29:See, CPLR § 6342(3).

Footnote 30:See, CPLR § 6342(4)(d)(ii); CPLR § 6342(5).

Footnote 31:See, CPLR § 6342(9).

Footnote 32:See, CPLR § 6343(2).

Footnote 33:See, CPLR § 6343(3)(b), (c).

Footnote 34:See, NY Bill Jacket, 2019 S.B. 2451, Ch. 19.

Footnote 35:See, NY Spons. Memo., 2023 A.B. 7717.

Footnote 36:See, NY EDUC § 1125(6) [" "Administrator" or "school administrator" shall mean a principal, or the equivalent title, in a school, or other chief school officer."]; see also, NY EDUC § 2(13) ["School officer. The term "school officer" means a clerk, collector, or treasurer of any school district; a trustee; a member of a board of education or other body in control of the schools by whatever name known in a union free school district, central school district, central high school district, or in a city school district; a superintendent of schools; a district superintendent; a supervisor of attendance or attendance officer; or other elective or appointive officer in a school district whose duties generally relate to the administration of affairs connected with the public school system."]; NY EDUC § 1711 ["1. The board of education of any union free school district may appoint a superintendent consistent with the provisions of this section. 2. Such superintendent shall possess, unless otherwise specified by the by-laws of the board of education, the following powers and be charged with the following duties: a. To be the chief executive officer of the school district and the educational system, and to have the right to speak on all matters before the board, but not to vote. b. To enforce all provisions of law and all rules and regulations relating to the management of the schools and other educational, social and recreational activities under the direction of the board of education.***e. To have supervision and direction of associate, assistant and other superintendents, directors, supervisors, principals, teachers, lecturers, medical inspectors, nurses, claims auditors, deputy claims auditors, attendance officers, janitors and other persons employed in the management of the schools or the other educational activities of the district authorized by this chapter and under the direction and management of the board of education; to transfer teachers from one school to another, or from one grade of the course of study to another grade in such course, and to report immediately such transfers to such board for its consideration and actions; to report to such board violations of regulations and cases of insubordination, and to suspend an associate, assistant or other superintendent, director, supervisor, expert, principal, teacher or other employee until the next regular meeting of such board, when all facts relating to the case shall be submitted to such board for its consideration and action. f. To have supervision and direction over the enforcement and observance of the courses of study, the examination and promotion of pupils, and over all other matters pertaining to playgrounds, medical inspection, recreation and social center work, libraries, lectures, and all other education activities under the management, direction and control of the board of education."].

Footnote 37:See, CPLR § 6340(2)(c).

Footnote 38:See, Anonymous School v. Anonymous Student, 76 Misc 3d 1070 [Sup. Ct. Saratoga Cnty 2022]).

Footnote 39:See, C.F.R., Title 34, Subtitle A, Part 99, Subpart D § 99.36(a); § 99.36(c).

Footnote 40:See 73 FR 74806-10.

Footnote 41:See, 73 FR 74806-10.

Footnote 42:See, 73 FR 74806-10.

Footnote 43:See, 73 FR 74806-10.

Footnote 44:See, 73 FR 74806-10.

Footnote 45:See, FRE Rule 101, 20 U.S.C.